**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
MANHATTAN DIVISION**

| | |
|---|---|
| NYKERIA THOMAS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DRIVE SALLY LLC,<br><br>Defendant. | Case No. 1:26-cv-05439<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Nykeria Thomas ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her undersigned counsel, alleges as follows based upon personal knowledge as to her own acts and experiences, and as to all other matters, upon information and belief, including the investigation conducted by her counsel.

## INTRODUCTION

1. Plaintiff brings this class action against Defendant Drive Sally LLC ("Drive Sally" or "Defendant") on behalf of herself and all similarly situated rideshare drivers ("Class Members") who rented vehicles from Drive Sally.

2. This action arises from Drive Sally's uniform and deceptive business model through which it advertises vehicle rentals at fixed weekly rates with "no hidden fees" and "all-inclusive" pricing including insurance and maintenance and then, through a standardized onboarding process, obtains deposits, payment credentials, vehicle reservations and travel commitments from drivers before disclosing the complete economic and contractual obligations of the transaction.

3. Drive Sally makes affirmative misrepresentations about the cost and terms of its rental services and omits information that would allow drivers to discover the truth before they are financially and practically committed to rental agreements.

4. Additionally, Drive Sally represents in its marketing and advertising that it offers refundable deposits, meticulously maintained vehicles suitable for most rideshare platforms and that its rentals are permitted for both personal and rideshare use.

5. These representations were disseminated to the public online through Drive Sally's website and mobile applications and through its third-party partners including Uber and were directed at prospective consumers nationwide.

6. Plaintiff Thomas and Class Members relied on Drive Sally's representations when deciding to commit to rental services. Those representations were material and, in the context of the transaction as a whole, misleading, and Plaintiff Thomas and Class Members would not have rented from Drive Sally, had they known about the true costs, limitations and terms of the rental services prior to becoming financially and logistically committed to the transaction.

7. Drive Sally knew, or was reckless in not knowing, that these representations were false and capable of deceiving reasonable consumers at the time they were made.

8. Drive Sally's business model is designed to induce drivers to commit to rental agreements before they are provided with the material terms governing the agreement. Drive Sally requires drivers to pay initial deposits and thereafter contacts drivers to schedule a time to travel to its physical vehicle pickup locations before being presented with the Order Form, the Terms and Conditions or the Additional Fees and Charges Schedule.

9. At the pickup locations, Drive Sally promises to "walk" drivers through the rental agreement. However, the experiences of Plaintiff Thomas and Class Members reveal that Drive

Sally misrepresents and otherwise fails to disclose material terms of the rental agreement by not providing the full Terms and Conditions.

10. Drivers are shown and must execute a limited Order Form without being provided with the full Terms and Conditions or the Additional Fees and Charges Schedule that Drive Sally later relies on to impose additional charges and coercive business practices on drivers.

11. Because Drive Sally fails to provide drivers with the entire terms governing the rental agreement prior to execution, drivers are not afforded a meaningful opportunity to review or assent to those terms. As a result, drivers such as Plaintiff and Class Members are unaware that they are exposed to substantial additional liabilities and expenses, including the limitations and exclusions of the insurance and maintenance benefits, deductible and vehicle damage exposure, roadside, towing and repair expenses, continued weekly payments during periods when the vehicle is unusable, early termination fees, other surprise fees, remote vehicle deactivation and unilateral rate modification.

12. Only after drivers are financially and practically committed to the transaction do drivers learn about the true costs, limitations and terms of Drive Sally's rental services.

13. Drive Sally also fails to return refundable deposits as promised, provides badly maintained and/or unsafe vehicles and otherwise fails to ensure that its vehicles are acceptable for use with other rideshare platforms.

14. Further, Drive Sally abuses its contractual discretion and utilizes coercive practices against drivers, including unilateral weekly rate increases, threatening billing practices, and remote vehicle deactivation, which drivers cannot reasonably resist given their dependence on the vehicles for income and deprives them of the benefit of their bargain.

15. Drive Sally's conduct, as alleged herein, is deceptive and unjust. Drive Sally intentionally targets the vulnerable rideshare driver population through its marketing and advertising, induces them to enter rental agreements while omitting material terms and fees that govern the agreement, and thereafter utilizes coercive business practices to keep drivers economically dependent on its services. This pattern is so prevalent that thousands of online complaints have been lodged against Drive Sally.

16. Accordingly, Plaintiff seeks damages, restitution, and all other appropriate relief she and similarly situated drivers suffered and continue to suffer resulting from Drive Sally's violations of the consumer protection laws of New York and Illinois, breaches of contract and other common law claims.

## JURISDICTION AND VENUE

17. This action is properly before this Court, and this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) (the Class Action Fairness Act). At least one member of the proposed class is a citizen of a different state than Drive Sally, the number of proposed Class Members exceeds 100, and the amount in controversy exceeds the sum or value of $5,000,000.00 exclusive of interests and costs. *See* 28 U.S.C. § 1332(d)(2)(A).

18. In addition, under 28 U.S.C. § 1367, this Court may exercise supplemental jurisdiction over the state law claims because all the claims are derived from a common nucleus of operative facts and are such that Plaintiff would ordinarily expect to try them in one judicial proceeding.

19. This Court has personal jurisdiction over Defendant because Defendant maintains its principal place of business in this District. Defendant also maintains sufficient minimum contacts in this District and otherwise intentionally avails itself of the markets within this District

through the promotion, sale and marketing of its rental services and which renders the exercise of jurisdiction by this Court proper and necessary.

20. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant maintains its principal place of business in this District and a substantial part of the events and/or omissions giving rise to Plaintiff's claims emanated from this District.

21. Additionally, the parties' rental agreement contains a forum selection clause providing that this District:

> "shall have exclusive jurisdiction over any claim, demand, lawsuit or legal action or cause of action arising out of or relating to the Agreement, or instituted hereunder, or based upon any document subsequently delivered pursuant hereto. Each party hereto irrevocably and unconditionally (i) consents to the exclusive jurisdiction of any state or federal court located within New York County, New York, (ii) submits to the personal jurisdiction and venue of such courts for such purposes, and (iii) waives all claims (by way of motion, as a defense or otherwise) of improper venue, that any such court is an inconvenient forum, that this Agreement or its subject matter may not be enforced in or by such courts, and that such party is not subject personally to the jurisdiction of any such court." *See* "Exhibit A" at Section 34.F.

22. As such, this District is a proper and contractually agreed-upon forum. *Koninklijke Philips Electronics v. Digital Works, Inc.*, 358 F. Supp. 2d 328, 333 (S.D.N.Y. 2005)

## THE PARTIES

### A. Plaintiff Nykeria Thomas

23. Plaintiff Nykeria Thomas is a citizen of Glen Ellyn, Illinois who rented from Drive Sally for rideshare driving beginning in July 2025 from a Drive Sally location in Chicago, Illinois.

24. Plaintiff was not provided with the full terms governing the rental agreement before signing up for rental services, paying a deposit and traveling to Drive Sally to retrieve her vehicle. Thus Plaintiff was unaware that she faced significant additional liabilities, fees and other terms

that were not disclosed to her before she committed to the transaction and that were contrary to the net impression created by the rental service represented by Drive Sally as alleged herein.

25. Plaintiff Thomas also fell victim to coercive business practices while renting from Drive Sally.

26. A rental agreement at a fixed weekly rate which included coverage for both insurance and maintenance and had no hidden fees was important to Ms. Thomas' purchase decision. Relying on these assurances, Ms. Thomas signed a contract with Drive Sally without being provided the full terms and fees governing the agreement. Had Plaintiff been aware of what the insurance and maintenance benefits did and did not cover, of the substantial additional liabilities, fees and obligations she retained, and of the full terms governing the rental agreement, she would not have entered into the rental agreement with Drive Sally.

27. On or about March 3, 2026, through her counsel, Ms. Thomas sent a letter to Drive Sally notifying it of its violations of state law and breaches of contract, demanding relief on behalf of herself and all others similarly situated, and notifying Drive Sally of her intent to bring claims alleged herein if Drive Sally did not comply. Drive Sally did not respond to Plaintiff's letter.

**B. <u>Defendant</u>**

28. Defendant Drive Sally LLC is a limited liability company organized and existing under the laws of Delaware, is registered to do business in New York and maintains a principal place of business at 23-59 Borden Avenue, Long Island City, NY 11101.

29. Drive Sally is a fleet operator that offers rental services. Drive Sally markets and offers services in the New York City, San Francisco, Chicago and Las Vegas metropolitan areas.

30. Drive Sally promotes, markets, and advertises its rental services directly to consumers on its website and through third-party partners such as rideshare companies including, but not limited to, Uber.

31. Defendant's deceptive marketing, advertising, website and mobile application operations, as fully described herein, are directed and controlled from its headquarters in Long Island City, New York.

## FACTUAL ALLEGATIONS

### A. Drive Sally's Position in the Rideshare Industry

32. Ridesharing is an on-demand transportation service available on most smartphones where mobile applications are used to connect users with private drivers for a fee.[1]

33. The ridesharing industry in the United States is massive and continues to grow. It is estimated that roughly 36% of the U.S. population uses rideshare services such as Uber or Lyft.[2] In 2025, the industry was valued at $58.1 billion and is expected to increase to $70 billion in 2026.[3]

34. Rideshare companies utilize technology to match drivers with riders through a customer-to-customer business model at the touch of the fingertip with most smartphones.[4] Their platforms enable vehicle owners to turn their vehicles into their own taxi service and generate income.

35. Rideshare drivers need only meet a few minimum requirements before driving for companies. For example, Uber requires its drivers to meet the minimum age to drive in a specific

---

[1] Market Data Forecast, *U.S. Ride Sharing Market Size, Share, Trends & Growth Forecast Report*, https://www.marketdataforecast.com/market-reports/united-states-ride-sharing-market (last updated May 2026, last visited June 11, 2026).

[2] Statista, *Ride-sharing services in the U.S. – statistics & facts*, https://www.statista.com/topics/4610/ridesharing-services-in-the-us/ (visited June 11, 2026).

[3] *Supra* fn.1.

[4] *Id.*

state, have at least one year of driving experience, have access to an eligible four-door vehicle, share proof of legality (such as a valid driver's license and insurance) and pass a background check.[5]

36. These minimum requirements demonstrate that there is no high bar to becoming a rideshare driver in the United States and it's reasonable to assume that most citizens would qualify.

37. Research shows that rideshare drivers work substantial hours and rely on driving as their primary source of income.[6]

38. A 2024 report surveying rideshare drivers in New York City found that respondents were largely full-time Uber/Lyft drivers, that 81% of drivers drove 32+ hours per week, 56% drove for a for-hire company for five years or more, and 80% drove as their sole source of income.[7]

39. The UCLA Labor Center's Los Angeles driver survey found that driving was "more than a casual gig" and reported that over one-third of drivers bought or leased a car so they could drive for a ride-hailing company.[8]

---

[5] Uber, *Requirements to sign up as a driver*, https://help.uber.com/en/driving-and-delivering/article/requirements-to-sign-up-as-a-driver?nodeId=d4a4038b-2553-4917-af9c-132135feece7 (visited June 11, 2026).

[6] Gridwise, *Who are rideshare drivers? A demographic breakdown of rideshare drivers in the U.S.*, https://gridwise.io/blog/who-are-rideshare-drivers-a-demographic-breakdown-of-rideshare-drivers-in-the-u-s (Aug. 19, 2020) (visited June 11, 2026).

[7] James A. Parrot, Center for New York City Affairs at The New School, *Revised Expense Model for the NYC Taxi and Limousine Commission's High-Volume For-Hire Vehicle Minimum Pay Standard* (Dec. 2024).

[8] UCLA Labor Center, *New UCLA Report Finds Driving is More than a Casual Gig for LA Ride-Hailing Drivers*, https://labor.ucla.edu/new-ucla-report-finds-driving-is-more-than-a-casual-gig-for-la-ride-hailing-drivers/ (May 31, 2018) (visited June 11, 2026).

40. National data tells a similar story. More than two-thirds of the digital labor platform workers put in full-time hours.[9] About 36% of rideshare drivers bought or leased a vehicle to drive.[10]

41. Additionally, rideshare drivers are comprised of members of minority groups. According to data from the United States Bureau of Labor Statistics, Black and Latino workers make up almost 42% of Uber drivers although they comprise less than 29% of the overall U.S. workforce.[11]

42. State surveys reveal more of the same data. In New York City, 86% of app-based drivers are immigrants and 80% reported acquiring their vehicle to enter the industry and would risk losing their investment if they switched to work in another industry.[12]

43. In San Francisco, nearly 80% of app-based drivers and delivery workers are people of color.[13]

44. In Los Angeles County, 23% of drivers for Uber and Lyft are Black, compared to only 8% of the general population.[14]

45. Employment through a rideshare company requires consistent access to a qualifying vehicle, insurance and the ability to absorb maintenance and repair costs.

46. For drivers unable to meet those requirements, a growing market of rental services has emerged, prompting companies like Drive Sally to capitalize from this market and provide vehicle access to rideshare drivers.

---

[9] National Employment Law Project, *App-Based Workers Speak: Studies Reveal Anxiety, Frustration, and a Desire for Good Jobs* (Oct. 2021).
[10] *Id.*
[11] *Supra* n.9.
[12] *Id.*
[13] *Id.*
[14] *Id.*

47. These rental companies often partner with rideshare companies such as Uber to advertise the rental services to rideshare drivers on the rideshare platforms who may lack access to a reliable vehicle.

48. Upon information and belief, Drive Sally is partnered with Uber and advertises its services through the Uber platform including its online website and mobile applications.

49. Upon information and belief, Drive Sally generates revenue through rental payments and fees as well as through charges for insurance products and other ancillary services.

50. The expansion of rideshare focused rental services appears closely tied to the demographic and economic realities of the rideshare workforce. Because many drivers rely on rideshare income on a near-daily basis, vehicle interruptions, including repair issues, insurance disputes, or inability to finance a vehicle independently, can immediately disrupt earning capacity. Rental providers like Drive Sally market themselves as a solution to that problem by offering quick access to rideshare-approved vehicles with often minimal barriers to entry. This provides a means for individuals to begin earning income immediately without the upfront costs associated with vehicle ownership.

51. Drive Sally has structured its services around the operational demands of driving for rideshare companies, including weekly payment models, rapid onboarding, insurance and maintenance coverage, and vehicle eligibility for rideshare platforms.

52. Drive Sally sets the terms and conditions governing all rentals, collects and processes all payments, controls the insurance and maintenance programs offered and presents itself to drivers as the party responsible for the rental experience from its headquarters in Long Island City, New York.

53. Drive Sally also takes a unique position as a data-driven company, leveraging data from its vehicles, drivers and public APIs to inform business decisions with the stated goals of incentivizing driver safety, reducing insurance costs and maximizing the value of their assets.[15]

**B. Drive Sally Markets and Advertises Its Rental Services to Rideshare Drivers**

54. Drive Sally specifically targets rideshare drivers through its marketing and advertising.

55. Drive Sally offers "Uber-ready" rentals for rideshare drivers in four metropolitan areas: San Francisco, Las Vegas, New York and Chicago.[16]




[15] https://www.linkedin.com/company/drive-sally/ (visited June 11, 2026).
[16] Image source: https://drivesally.com/.

56. Also prominently advertised are representations of "No hidden fees. No downtime. Find your car today. Uber-ready rentals for professional ride-share drivers."[17] Drivers are encouraged to apply and "get started today."[18]

57. On its website, Drive Sally repeatedly represents that there are no hidden fees.

58. Drive Sally elaborates that "no hidden fees" means "no surprises – what you see is what you pay. No unexpected costs, just a straightforward rental that fits your budget."[19]

**No hidden fees**

Transparent pricing means no surprises - what you see is what you pay. No unexpected costs, just a straightforward rental that fits your budget.

59. Similarly, Drive Sally promises "[w]eekly rentals at a fixed price. No hidden fees – just a premium vehicle and reliable customer service."[20]

Weekly rentals at a **fixed price**. No hidden fees - just a premium vehicle and reliable customer service.

60. Drive Sally represents that a weekly rental payment includes the price of "the car rental, liability insurance and access to our maintenance and repair facilities. You pay every Thursday at 12:30pm ET for the upcoming week of use."[21]

**What's included in my weekly payment?**

Your payment includes the car rental, liability insurance, and access to our maintenance and repair facility. You pay every Thursday at 12:30pm ET for the upcoming week of use.

---

[17] *Id.*
[18] *Id.*
[19] *Id.*
[20] *Id.* (emphasis in original).
[21] Image Source: FAQ at https://drivesally.com/.

61. Drive Sally continues to make representations of no hidden fees and all-inclusive pricing in specific advertisements for its rental services in Chicago: "starting at $380 per week with everything included – no hidden fees. Your deposit is fully refundable after 30 days. Insurance, maintenance and remote and on-site support come standard with every rental."[22]




62. Drive Sally makes identical representations for its rental services offered in San Francisco, Las Vegas and New York.[23]

[22] https://www.drivesally.com/chi
[23] Image source(s): https://www.drivesally.com/sf; https://www.drivesally.com/lv; https://www.drivesally.com/nyc.




63. Drive Sally relies on its no hidden fees, all-inclusive pricing model to set itself apart from competitors, claiming that "The Sally Way" includes everything, "yes, everything."[24]




64. With regard to its vehicle fleet, Drive Sally promises "clean and reliable vehicles" and describes its fleet as "meticulously maintained."[25]

---

24 https://www.drivesally.com/nyc.
25 https://drivesally.com/




65. Drivers are prompted on the website to explore available rentals in the respective cities they seek to drive in. Drivers are shown vehicle availability accompanied by quoted weekly rates and representations to the effect that insurance is included.[26]




66. As a driver continues through the booking process by selecting a vehicle, additional representations appear on the next page that the "[r]ental price includes liability insurance and preventative maintenance," that the vehicle is "meticulously maintained" and promises a refund of a $400 deposit "after 30 days."[27]

[26] https://drivesally.com/onboarding?location=chi (visited Jan. 2026).
[27] *Id.*




67. Drive Sally advertises similarly on Uber's driver platform.

68. Plaintiff Thomas saw the Drive Sally advertisement pasted below on the Uber platform which represents a weekly rate of $275 and the following additional "Perks from the partner": (1) Insurance and maintenance included; (2) Unlimited mileage; and (3) Drive Sally customer support.



69. Visible on Drive Sally's website under Frequently Asked Questions, Drive Sally represents that its rentals can be used for personal use.[28]

> **Can I use the car for personal use?**
>
> Yes, you can use the car for personal reasons as long as it complies with the rental agreement and does not violate any restrictions.

70. Drive Sally also permits its rental vehicles to be used for both Uber and Lyft, thereby purporting to represent that their rental vehicles qualify for use with both companies.[29]

> **Can I drive for both Uber and Lyft?**
>
> Yes, we allow use of the rental vehicle for both Uber and Lyft or any other vehicle rideshare service, as long as it complies with the rental agreement and that rideshare company's policies.

71. The advertisements as described herein, as well as Drive Sally's website and mobile application, through which drivers apply for rental services, are developed and operated from Drive Sally's headquarters in New York.

72. Drivers, having seen and relied on Drive Sally's various representations that there are no hidden fees, that insurance and maintenance are included, that vehicles are reliable and permitted for use with other rideshare services, have no reason to believe that they are untrue and such representations are material to drivers when deciding to rent from Drive Sally.

73. Since rideshare drivers require continuous access to a reliable vehicle and are often in vulnerable economic conditions, Drive Sally's representations about its rental services were material to drivers when deciding to rent from Drive Sally.

---

[28] "Your questions, answered" at https://www.drivesally.com/.
[29] *Id.*

74. These representations, in the context of the transaction as a whole are materially misleading. Plaintiff and Class Members have reported that the rental services as advertised are not what Drive Sally provides.

75. After drivers agreed to be bound by signing up and paying deposits, Plaintiff and Class Members traveled to pick up locations where Drive Sally employees told them, for the first time, that ancillary products had to be purchased or else they would face substantial liability for damage to the vehicle, without explaining what the insurance and maintenance benefits covered, what they excluded, or what exposure drivers retained.

76. Plaintiff and Class Members also report surprise charges such as fees for roadside assistance, towing, early termination, tolls, tickets, late payment and vehicle reactivation, among others. Others reported that charges were improperly applied or calculated.

77. Drive Sally's representations that its vehicles are suitable for use with other rideshare services are also false. Plaintiff and Class Members report rejection from the Lyft platform because Drive Sally does not register its vehicles according to Lyft's vehicle requirements.

78. Additionally, Plaintiff and Class Members have complained that contrary to Drive Sally's representations about vehicle reliability, the vehicles provided to drivers are not meticulously maintained and instead suffer from various defects that may render the vehicle unsafe and unsuitable for rideshare use.

## C. Drive Sally Induces Drivers to Sign Rental Agreements Without Disclosing the Full Terms of the Agreement

79. As explained, Drive Sally targets to service an economically vulnerable population: rideshare workers who depend on continuous vehicle access for their primary income. Drivers

cannot earn money without a reliable vehicle, making them highly susceptible to pressure tactics and coercion.

80. Drive Sally's business model is designed to obtain financial and logistical commitments before drivers are provided a meaningful opportunity to evaluate the complete transaction and then induce drivers to execute a one-sided form contract, without offering drivers the meaningful opportunity to review, understand, or negotiate its terms.

81. Based on Plaintiff Thomas' and Class Members' experiences, the process is as follows:

82. First, a prospective driver becomes interested in Drive Sally's rental services by viewing advertisements on Drive Sally's online or mobile platforms or its partners' platforms, which represent a fixed weekly price, all-inclusive pricing, included insurance and maintenance, and no hidden fees.

83. Second, the driver applies, provides personal and payment information and selects a vehicle to reserve.

84. Third, Drive Sally quickly contacts the driver to pay an initial deposit. Once the driver pays the deposit, Drive Sally schedules the driver to travel to one of Drive Sally's pickup locations to obtain the vehicle **before any terms are presented or signed**.

85. Fourth, the driver travels – in some cases a significant distance – to a Drive Sally pickup location. By this point, the driver has expended money and time, supplied personal information, arranged transportation and depended on obtaining a vehicle to begin ridesharing.

86. Fifth, at the pickup location, a Drive Sally employee provides the driver with a partial overview of the rental agreement and presents an Order Form for the driver's signature

which shows certain weekly recurring charges that amount to the weekly rate the driver is obligated to pay.

87. The Order Form does not clearly explain the scope and limitations of the promised insurance and maintenance benefits, the driver's remaining deductible and vehicle damage exposure, roadside and towing obligations, continued payment obligations if the vehicle is unusable, unilateral rate changes, termination consequences and other additional fees.

88. Rather, the Order Form purports to incorporate the separate Terms and Conditions which in turn purports to incorporate a separate Additional Fees and Charges Schedule that the Order Form itself does not mention.

89. Drive Sally does not furnish those documents to drivers as part of the in-person execution, affirmatively present them for review, or provide a reasonable opportunity to evaluate them before requiring payment and assent.

90. Nor do the Terms and Conditions, if eventually identified by drivers, cure the deficiencies.

91. For example, the Order Form includes the following language: "Any changes to this Order Form must be mutually agreed upon…" *See* Exhibit B "Order Form." But the Terms and Conditions specify that the driver's failure to accept any changes results in early termination and may result in an Early Termination Fee. *See* Exhibit A at Section 10.

92. The Early Termination Fee is a hefty $400.

93. Drive Sally also requires drivers to pay and execute the Order Form before inspecting the vehicle.

94. Upon information and belief, the oral representations made to drivers by Drive Sally employees at the pickup locations with regards to the rental agreement concern the amounts

of the recurring weekly charges that make up the drivers' weekly rate, that damage waivers are required to be purchased or else drivers' face substantial liability and that the minimum duration of the rental agreement is two weeks.

95. Upon information and belief, these representations are made so that drivers do not inquire more about the promised benefits or the entirety of the parties' contractual obligations.

96. As shown below, the foregoing sequence of events coincides with what Drive Sally represents on its website.[30]




97. As a result of Drive Sally's onboarding process, Plaintiff and Class Members accepted rental agreements without having read, or been given a meaningful opportunity to read, the Terms and Conditions or the Additional Fees and Charges Schedule.

98. Only after Plaintiff and Class Members became locked in to rental agreements did they learn that: they were subject to significant liabilities, additional fees, their vehicles were badly

[30] https://www.drivesally.com/.

maintained and/or unsafe, their vehicles did not qualify for use with other rideshare platforms and that they were subject to continual payment obligations that made it difficult to protect their interests and exit their rental agreements without facing significant fees.

99. Had Drive Sally clearly disclosed the complete transaction including the scope of the insurance and maintenance benefits, the substantial additional liabilities and fees retained by the drivers under the Terms and Conditions – Plaintiff and Class Members would not have executed their agreements.

**D. <u>The Terms and Conditions of the Rental Agreement</u>**

100. The following terms in the Terms and Conditions[31] are material and were not disclosed to Plaintiff and Class Members prior to executing the Rental Agreement.

101. Section 3 provides:

"Lessee agrees to a seven (7) day rental period (the "Rental Period")."[32]

102. Section 4 provides:

> The payment due each week (the "Total Weekly Payment") is the SUM OF THE SEPARATE AMOUNTS SPECIFIED IN YOUR ACCOUNT INFORMATION. The Total Weekly payment is payable in advance of each weekly Rental Period.

103. Section 4 further provides that the Total Weekly Payment can be changed at Drive Sally's sole discretion and is subject to increase if the Lessee:

> "INCURS ANY ACCIDENTS, POINTS, OR TRAFFIC MOVING VIOLATIONS, OR FAILS TO MAKE ANY PAYMENT WHEN DUE OR IF SALES TAX RULES AND RATES CHANGE, AS SPECIFIED IN SECTION 5, OR AS OTHERWISE SPECIFIED UNDER THIS AGREEMENT."[33]

---

[31] *See* Exhibit A.
[32] *See* Section 3 in Exhibit A.
[33] *See* Section 4 in Exhibit A.

104. Critically, Section 4 also provides: "Failure by Lessee to agree to any rate modification will be considered Early Termination under Section 19."[34]

105. Section 8 provides that a consumer's deposit is refundable one month after termination of the Rental Agreement, less deductions for outstanding payments, late fees, taxes, damages, insurance deductibles, and "all other applicable costs that may have been incurred by Lessor."[35]

106. As a result of Section 8, the deposits paid by Plaintiff and Class Members were not refundable unless they executed rental agreements, placing economic pressure on Plaintiff and Class Members to execute their agreements.

107. Section 10 subjects consumers to unilateral changes:

> Any change You [the Lessee] request must be agreed upon by Lessor through the Drive Sally application prior to going into effect. Your [the Lessee] failure to accept any change required by Lessor pursuant to the Terms herein shall result in early termination of your Lease Term and may result in Early Termination Fees.[36]

108. Section 11, buried in the Terms and Conditions, states that, in addition to all amounts due, the driver agrees to pay the fees listed in the Additional Fees and Charges Schedule.[37]

109. The following additional charges, found in the Fee Schedule that is not disclosed in Drive Sally's advertising or Order Form, but is buried in the Terms and Conditions via a hyperlink, contradict Drive Sally's "no hidden fees" representation: Early Termination Fee: $400; Late Payment Fee: $50; Camera Fee (for lost/damaged dash cam): $350; Fuel & Charging Fee: $20 per quarter-tank; Cleaning Fee–Exterior: $35; Cleaning Fee–Interior: $100; Cleaning Fee–Odor: $250; Lost or Broken Key Fee: $400; Ticket Service Fee: 20% of ticket cost; Toll Service

---

[34] *Id.*
[35] *See* Section 8 in Exhibit A.
[36] *See* Section 10 in Exhibit A.
[37] *See* Section 11 in Exhibit A.

Fee–Chicago: $0.50 per toll; Third Party Service and Repairs: 15% surcharge; Missed Maintenance Appointment: $150; Reactivation Fee: $25; and Vehicle Change Fee: $25, among others.

110. Section 12 contains several provisions that shift substantial risk to the driver:

> **12(B):** If the Vehicle is damaged in an Accident, Lessor shall decide in its sole discretion whether the Vehicle should be repaired.
>
> **12(C):** You also must keep making any Total Weekly Payments as they come due even if the Vehicle is damaged or unusable for a period of time, subject to Section 14 below.
>
> **12(D):** Lessee shall pay for all Vehicle loss or damage resulting from an Accident that is not paid by insurance proceeds under the insurance coverage described in Section 14, including costs associated with towing and storage, plus applicable taxes.
>
> **12(E):** Lessee is fully responsible for roadside service, including the following services: (i) flat tire replacement, (ii) lockout service, (iii) jump start, (iv) fuel and energy delivery, and (v) towing.
>
> **12(F):** Lessee is fully responsible, not limited by the Deductible, for all damage to the Vehicle caused by break-ins and hit-and-runs.[38]

111. Section 12(C)'s obligation to pay for unusable vehicles is particularly significant because of drivers' need for continuous access to a vehicle for their livelihoods.

112. Section 13 provides that if Drive Sally terminates the Agreement because a vehicle is lost, stolen or otherwise damaged, Drive Sally may terminate the agreement and the driver "will be required to pay the amounts, as applicable, described in Section 19," which include the Early Termination Fee and forfeiture of the deposit, even though the loss was not the driver's fault. This provision creates the perverse result that a driver may be penalized $400 when Drive Sally chooses

---

[38] *See* Section 12 in Exhibit A.

to end the lease due to a vehicle Drive Sally owns becoming inoperable through no fault of the driver.

113. Together, Sections 12 and 13 eliminate any meaningful remedy for drivers when vehicles fail, are in poor condition, or are damaged through no fault of the driver.

114. Section 14 requires Drive Sally to maintain liability insurance on the vehicle during the rental agreement period. It states:

> "Lessor agrees to maintain liability insurance on the Vehicle for such time as the Agreement remains in full force and effect, in such amounts as required by applicable state and local laws with respect to vehicles utilized in the for-hire, vehicular ground transportation industry. Lessor shall (upon Lessee's written request) furnish to Lessee proof of such insurance coverage, including the name of the insurance company (the "Insurance Company"), policy number, address and telephone number."[39]

115. Drive Sally denies proof of insurance coverage when requested, as it did to Plaintiff Thomas.

116. Section 16 defines all events that Drive Sally may consider a default of the agreement. These events include: failure to make timely weekly payments; failure to perform material obligations; vehicle seizure; and failure to respond to staff within one business day, among others.[40]

117. Section 17 authorizes Drive Sally to "take back the Vehicle by legal process or self-help" upon default, provided it does not "breach the peace."[41]

118. As described in more detail herein, Drive Sally uses kill-switch technology, or remote deactivation, as a form of repossession, including while drivers are actively driving,

[39] *See* Section 14 in Exhibit A.
[40] *See* Section 16 in Exhibit A.
[41] *See* Section 17.D in Exhibit A.

without providing any notice and cure requirements that applicable state law may require before repossession.

119. Section 19 governs early termination of the Rental Agreement and requires: (i) at least one (1) week prior notice by the terminating party to the other party, and (ii) a minimum Lease Term as specified in your account information."[42] Drivers are required to return the vehicle to Drive Sally upon early termination, regardless of which party initiated the early termination[43].

120. Failure by renters to provide notice results in the Early Termination Fee and forfeiture of the deposit.[44]

121. Section 25 requires Drive Sally to arrange repairs and maintenance through an authorized provider but does not describe what the weekly maintenance charge covers and Section 12 and the Fee Schedule shift roadside service, towing and a 15% surcharge on third-party service and repairs back to the driver.[45]

122. Because Drive Sally controls whether, where and when repairs may be performed and because the driver remains responsible for roadside service, towing, storage and for continued weekly payments while the vehicle is unusable, these provisions expose drivers to continuing rental charges and lost rideshare income during periods in which Drive Sally fails to provide an operable vehicle or timely substitute. None of this is disclosed to drivers prior to becoming financially and practically committed to the transaction.

---

[42] *See* Section 19 in Exhibit A.
[43] *Id.*
[44] *Id.*
[45] *See* Section 25 in Exhibit A.

123. Sections 26 and 27 explain the data that Drive Sally may collect from drivers and vehicles and permit use of that data.[46] Drive Sally uses this data not for legitimate safety or business purposes, but rather as a threatening instrument for payment collection and imposition of fees.

124. Specifically, Section 26 provides that Drive Sally "may install telematics recording equipment and Global Positioning System equipment in the Vehicle," "may install dash cameras in the Vehicle," and "may use such equipment" to record events or conversations occurring in or near the Vehicle and to track and record the Vehicle's location, speed, and other data for safety and other reasons.[47]

125. Drive Sally does not disclose to drivers that the vehicle is or may become a surveillance device before they commit to the transaction, nor does the Order Form expressly mention it.

126. Drivers report showing up to routine maintenance appointments and then learning, for the first time, that Drive Sally will install a dash cam. After installation of these dash cams, drivers report being charged an additional deposit and other hefty fees for their driving behavior.

127. Further, drivers report that the deposits and/or fees are assessed incorrectly and unfairly, including conduct that did not occur, and for conduct that is not attributable to the driver.

128. Like the fees, liabilities and obligations described above, Drive Sally's surveillance of drivers and its practice of charging discretionary driving-behavior fees are material facts that Drive Sally does not disclose in its advertising, on the Order Form, or at any point before drivers pay deposits, provide payment credentials, reserve vehicles, and travel to pickup locations. A reasonable driver would consider it important, in deciding whether to rent, that the vehicle would

---

[46] *See* Section 26 in Exhibit A.
[47] *Id.*

be used to monitor and record the driver's conduct and conversations, and that the rental price was subject to open-ended charges based on Drive Sally's unilateral assessment of the driver's driving.

129. Section 34 contains both choice of law and choice of forum clauses, which state in relevant part:

> "E. The Agreement has been negotiated, executed, and delivered in the State of New York and shall be governed by and construed and enforced in accordance with the laws of the State of New York (without giving effect to any jurisdiction's principles regarding conflict of laws).
>
> F. The state and federal courts located within New York County, New York, shall have exclusive jurisdiction over any claim, demand, lawsuit or legal action or cause of action arising out of or relating to the Agreement, or instituted hereunder, or based upon any document subsequently delivered pursuant hereto. Each party hereto irrevocably and unconditionally (i) consents to the exclusive jurisdiction of any state or federal court located within New York County, New York, (ii) submits to the personal jurisdiction and venue of such courts for such purposes, and (iii) waives all claims (by way of motion, as a defense or otherwise) of improper venue, that any such court is an inconvenient forum, that this Agreement or its subject matter may not be enforced in or by such courts, and that such party is not subject personally to the jurisdiction of any such court."[48]

130. The Order Form is a single page that purports to incorporate the Terms and Conditions by hyperlink only. Drive Sally does not furnish the full Terms and Conditions nor the Additional Fees and Charges Schedule to drivers even though drivers are physically present at the pickup locations.

131. The Order Form does not mention the Additional Fees and Charges Schedule. That document is referenced only in the Terms themselves, again only by hyperlink.

132. Even if the Terms and Fee Schedule were incorporated, the Order Form remained misleading in the context of the entire transaction: the driver had already paid,

---

[48] *See* Sections 34.E-F in Exhibit A.

traveled and committed before seeing them and the Order Form did not explain the benefits purchased, their limitations, or the liabilities retained.

## E. Plaintiff Nykeria Thomas' Experience

### i. Plaintiff Thomas Was Induced to Sign the Rental Agreement

133. Plaintiff Thomas saw an ad for Drive Sally's rideshare rental services on Uber's driver platform for midsized vehicles from $275/week with insurance and maintenance included, unlimited mileage and customer support.

134. Plaintiff, in reasonable reliance on Drive Sally's quoted price and representations that insurance and maintenance were included as advertised, clicked on the ad to inquire about booking rental services.

135. Plaintiff was then prompted to provide her email address, which she did.

136. Drive Sally emailed Plaintiff with a link to download their mobile application to start the application process, which she did.

137. Plaintiff provided proof of rideshare status, her driver's license number and other sensitive information to Drive Sally.

138. Plaintiff was approved for rental services and she used Drive Sally's mobile application to select a Toyota Camry from $345/week with insurance and maintenance included.

139. Plaintiff understood from Drive Sally's representations that the quoted weekly price included meaningful coverage for insurance and maintenance and that she would not retain substantial undisclosed liabilities for damage to the vehicle, roadside service, towing or repairs.

140. Once approved, Drive Sally contacted Plaintiff via telephone to schedule her pickup appointment and told Plaintiff that the vehicle was available for pickup on July 28, 2025.

141. Drive Sally further represented to Plaintiff that if she paid $100 towards the total $300 deposit immediately, they would reserve the vehicle for her.

142. Plaintiff, relying on Drive Sally's oral and written representations at this point, agreed to pay a deposit and thereafter Drive Sally sent her a text which prompted her to upload her payment method and complete payment through the mobile app.

143. Plaintiff made payment of $100 to reserve her vehicle. A confirmation text was sent to her.

144. Plaintiff was not provided with any terms governing the rental service before or after paying her deposit and prior to arriving at the pickup location.

145. After driving one hour to the pickup location, Plaintiff arrived as scheduled on July 28, 2025 for her vehicle appointment, but was told by Drive Sally upon arrival that the vehicle was no longer available due to a motor vehicle accident.

146. Plaintiff was offered a 2023 Kia Forte instead, which Plaintiff reluctantly accepted for a higher rental price of $385/week with the understanding that insurance and maintenance coverage were included with no additional fees or liabilities.

147. A Drive Sally employee orally represented to Plaintiff Thomas some terms of the Rental Agreement including, among others, that Plaintiff was required under the Rental Agreement to rent for a minimum of two (2) weeks and that she was subject to a 20% toll service charge.

148. According to Plaintiff, the employee made no reference to additional terms or that additional terms and fees could be found in the separate Terms and Conditions and Fee Schedule documents.

149. Plaintiff was not informed prior to her commitment that the maintenance benefit allocated additional liabilities and expenses to her associated with roadside assistance, towing, tires, repair coordination and other maintenance-related events.

150. Similarly, Drive Sally did not disclose to Plaintiff prior to her commitment what the insurance benefit did and did not cover, including that it did not eliminate or materially limit Plaintiff's responsibility for the deductible and damage to the vehicle.

151. Rather, at the pickup location, Plaintiff was presented with a series of ancillary insurance options, which was explained to her by a Drive Sally employee to be a damage waiver.

152. The employee further represented to Plaintiff that should Plaintiff not purchase a damage waiver, the standard insurance package left her responsible for vehicle damage up to $50,000 and that she would need to purchase additional weekly products to reduce that exposure.

153. Additionally, the employee represented that protection for tires and windows required could be purchased for an additional weekly cost.

154. Drive Sally did not provide Plaintiff with the applicable insurance policy, coverage summary, exclusions or any explanation distinguishing third-party liability coverage from vehicle-damage responsibility and the optional products being sold. The employee's abbreviated oral presentation of optional products did not provide a coherent explanation of the insurance benefit.

155. Despite not understanding the intricacies of insurance, Plaintiff selected the most affordable ancillary option, the "basic" package with a $2,000 deductible and costing an additional $4/week.

156. Plaintiff was then required to pay her remaining deposit amount of $200, make payment for the upcoming rental period and sign an Order Form comprising the Rental Agreement prior to inspecting the vehicle.

157. Plaintiff, while under financial stress due to not having a vehicle to perform rideshare services, and after having already spent significant time and money by paying a deposit and traveling to rent a vehicle from Drive Sally, signed the Order Form reflecting a weekly payment of $389.00.

158. Plaintiff was not furnished with, shown, or directed to the contents of the Terms and Conditions or the Fee Schedule when she signed the Order Form, and was unaware of their contents.

159. Had Plaintiff known the truth of the cost and terms of the Rental Agreement she would not have rented from Drive Sally.

**ii. Drive Sally Made Unauthorized Charges and Exercised Unreasonable Discretion During the Rental Agreement**

160. One month into the Rental Agreement, on or about August 27, 2025, Drive Sally notified Plaintiff that her weekly rate was going up due to rising insurance costs. Rising insurance costs are not among the grounds for increasing the Total Weekly Payment enumerated in Section 4 of the Terms and Conditions.

161. Beginning that same day, Drive Sally incessantly texted Plaintiff a link to sign her new contract.

162. Plaintiff checked her app only to find that she was restricted access until she signed her new Order Form, which she reluctantly did because she was reliant on her vehicle for income.

163. Drive Sally's coercive tactics deprived Plaintiff of any meaningful opportunity to review, negotiate, or decline the new Order Form. Under the Terms and Conditions, her refusal to accept the modification would have been treated as an Early Termination and would expose her to the $400 Early Termination Fee and forfeiture of her deposit.

164. Plaintiff's Order Form for the second Rental Agreement reflected a total weekly payment of $434.00.

165. Additionally, Plaintiff was charged improper toll fees in violation of Section 23 of the Terms and Conditions and the Fee Schedule.

166. Section 23 provides that Plaintiff is responsible for all tolls, and that Drive Sally will collect toll fees and add a processing charge per the Fees Schedule.

167. The Fee Schedule specifies a $0.50 flat Toll Service Fee for each Chicago toll incurred.

168. However, Drive Sally verbally represented to Plaintiff that tolls are assessed at a 20% service charge, inconsistent with the Schedule's $0.50 flat fee.

169. Drive Sally charged Plaintiff $9.40 for travel on the Chicago Skyway, despite the actual two-axle vehicle toll being $7.80 at the time of incurrence and the applicable fee being $0.50, bringing the proper total to $8.30.

170. The $1.10 discrepancy is neither explained nor authorized under any term of the Rental Agreement.

**iii. Plaintiff Thomas Experienced Coercive Billing and Deactivation Practices During the Rental Agreement**

171. On or about October 22, 2025, Plaintiff had an account balance of $457.30. Plaintiff requested that her payment date be rescheduled for October 28, 2025.

172. On or about October 22, 2025, she received text confirmation from Drive Sally that her payment date was successfully rescheduled.

173. However, that same day, Plaintiff received another text from Drive Sally threatening that Plaintiff's car will be repossessed due to non-payment unless her balance was paid by 5pm that day.

174. At or about 5:45pm that day, not having paid her balance due to the rescheduled payment date, Drive Sally sent Plaintiff another text message threatening to deactivate her vehicle.

175. Plaintiff alleges that at or about 6:25pm on October 22, 2025, her vehicle was deactivated by Drive Sally using kill-switch technology while Plaintiff was actively driving with a passenger in her car.

176. Plaintiff attempted to reach Drive Sally for assistance through text message but did not receive communication and thus had to leave her vehicle and call an Uber home.

177. The next day, Plaintiff called another Uber back to her vehicle and contacted Drive Sally to activate the vehicle again. Plaintiff called two service representatives and waited over 15 minutes in freezing cold weather while Drive Sally reactivated her vehicle.

**iv. Plaintiff Received a Badly Maintained Vehicle**

178. On or about September 30, 2025, Plaintiff rented a 2021 Toyota Camry at a weekly rental rate of $394.00.

179. On or about December 1, 2025, Plaintiff's vehicle failed to start at a Walmart parking lot in freezing temperatures.

180. Plaintiff contacted Drive Sally who informed her to contact their authorized tow company for a jumpstart.

181. Plaintiff waited over four hours in the cold for the tow company to arrive on scene.

182. The tow truck driver informed Plaintiff that the vehicle had a leaking and eroded battery.

183. Drive Sally informed Plaintiff that it had the right to charge Plaintiff for the towing charges due to driver negligence.

184. Plaintiff alleges that Drive Sally represented via email that all vehicles receive a routine maintenance inspection prior to renting.

185. Plaintiff denies any driver negligence and further alleges that Drive Sally knew or should have known that the battery was leaking when she took possession of the vehicle.

186. On December 3, 2025, Drive Sally deactivated Plaintiff's vehicle due to non-payment even though Plaintiff was out of work while she dealt with repairs to the leaking battery.

187. Drive Sally also charged her a $25 late fee, which it offered to waive if Plaintiff filled out a customer survey.

**v. Plaintiff's Vehicle Was Denied by Lyft**

188. On or about December 3, 2025, Plaintiff attempted to register her Toyota Camry with the Lyft driver platform.

189. Plaintiff's only access to her vehicle's insurance information was an identification card that listed the insurance company as "Pacific Insurance Company."

190. Plaintiff provided Lyft with the limited insurance information she had when she applied.

191. Lyft denied Plaintiff's application citing that her vehicle's registration was a personal vehicle.

192. Plaintiff alleges that she was denied full access to her insurance policy when she requested such from Drive Sally.

**vi. Plaintiff Thomas Has Not Received Her Refundable Deposit Owed Under the Rental Agreement**

193. On or about January 6, 2026, Plaintiff Thomas was actively driving her vehicle with a passenger in the car.

194. Plaintiff's account balance was $414.35.

195. Plaintiff could not make her scheduled payment because she was actively driving her vehicle with a passenger inside.

196. While on an active trip, Drive Sally deactivated her vehicle with a passenger inside.

197. Drive Sally text messaged Plaintiff and explained that deactivation occurred because payment was not paid by 9:30am and added a $25 activation fee, bringing Plaintiff's balance to $439.35.

198. Plaintiff requested to remove the reactivation fee, to which Drive Sally responded they would waive if payment was received in the next fifteen minutes.

199. Plaintiff paid within fifteen minutes and her balance was $0.

200. On or about January 7, 2026, Drive Sally unilaterally terminated Plaintiff's Rental Agreement without explanation, without one-week prior notice as required in Section 19 of the Terms and Conditions, and otherwise in violation of the Terms and charged her a $400 Early Termination Fee.

201. Plaintiff did not intend to terminate her Rental Agreement.

202. Upon termination, Drive Sally continued to charge Plaintiff's account for the costs associated with towing her vehicle to retrieve it after they had terminated her agreement.

203. As of the date of this filing, Plaintiff has not received her refundable $300 deposit as promised under the terms of the Rental Agreement.

**F. Online Complaints Submitted by Drivers Confirm <u>Drive Sally's Conduct Across its Markets</u>**

204. Many drivers who committed to Rental Agreements with Drive Sally in New York, Chicago, San Francisco and Las Vegas report similar experiences to Plaintiff Thomas which reflects Drive Sally's standardized business practices.

205. Drivers complained online about unknown and unauthorized charges, badly maintained vehicles, denial of vehicle use for other rideshare services, unreturned deposits and coercive and threatening practices during the Rental Agreement periods, among others.

206. For example, in early 2026, Chicago-based driver Jayson Smith experienced additional insurance and maintenance fees, weekly rate increases and threatening text messages.[49] He reported:

> J Jayson Smith
> 2 reviews
> 5 months ago
>
> Drive Sally advertises weekly rates that claim insurance and maintenance are included, but after signing, additional mandatory fees are added, including a separate damage waiver that significantly increases the cost. Weekly pricing was changed during the rental without any improvement in service.
>
> Billing messages were sent even when payments were not yet due, creating confusion and unnecessary pressure. Vehicles are high-mileage, and despite marketing claims, maintenance issues still fall on the renter.
>
> This experience was misleading and financially harmful. Many of the negative reviews accurately reflect what renters experience. Rideshare drivers should carefully review all terms and be prepared for costs that differ from what is advertised.
>
> 5

207. Similarly, driver Joseph Freeman reported receiving a vehicle with a blown transmission and that his deposit was being withheld notwithstanding the maintenance issue.[50] He wrote:

---

[49] Google, https://www.google.com/search?q=drive+sally+chicago&rlz=1C1GCEA_enUS1068US1068&oq=drive+sally+chic&gs_lcrp=EgZjaHJvbWUqDAgAECMYJxiABBiKBTIMCAAQIxgnGIAEGIoFMg0IARAuGK8BGMcBGIAEMgYIAhBFGDkyCAgDEAAYFhgeMgcIBBAAGO8FMgoIBRAAGIAEGKIEMgcIBhAAGO8F0gEIMzI2N2owajeoAgCwAgA&sourceid=chrome&ie=UTF-8#lrd=

[50] *Id.*

> **Joseph Freeman**
> 7 reviews
>
> ★☆☆☆☆ Edited 6 months ago
>
> Fred went above and beyond for me really took amazing care of me and made the whole process incredible. Then my cars transmission blows out and I spend roughly 140 dollars on Ubers to get around after the car died an I get charged a prorated rate and haven't gotten my deposit back. This review will remain a one star because I normally don't do reviews but I had to I have yet to receive my deposit back let alone the prorated rate I paid to only have the car break down in an hour with a blown transmission
>
> 3

208. A return driver, Brian Padden, lost vehicle access on New Year's Eve after missing just one payment.[51] He reported:

> **Brian Padden**
> 6 reviews
>
> ★☆☆☆☆ 5 months ago
>
> Was a customer for 2 and a 1/2 years, over $50000, I gave them to rent their vehicles, missed one payment. This week because uba was awful last week. they take away my car at noontime on New Year's Eve biggest driving night of the year. Asked for a lousy 36 hour extension told me no the car i was just going to sit there over the holiday collecting dust. I could have made the money I've needed, but drive Sally, could care less
>
> 2
>
> > Drive Sally (Owner)
> > 5 months ago
> >
> > Thank you for sharing your feedback. We value long-term customers and understand how frustrating this situation must have felt, especially during a busy holiday period.
> >
> > Our policies are applied consistently across all contracts, but we take concerns like yours seriously. A member of our management team will reach out to you directly to review the circumstances and discuss this matter further.
> >
> > We appreciate you bringing this to our attention.

209. Drive Sally responded to the complaint and acknowledged the hardship that the loss of the vehicle caused during a busy holiday, adding **"[o]ur policies are applied consistently across all contracts**, but we take concerns like yours seriously."[52]

[51] *Id.*
[52] *Id.* (emphasis added).

210. Adel Aref complained of unfair charges and an inability to work with customer service, noting the following:[53]


Adel Aref
Local Guide · 34 reviews · 1 photo
4 months ago

TERRIBLE customer service and zero management accountability.
Unfair charges were applied, and there was no real way to resolve the dispute. Customer service was dismissive and management was completely unavailable. The level of service is terrible and far below any acceptable standard

1

Drive Sally (Owner)
4 months ago

Thank you for taking the time to share your feedback. We strive to provide clear information and a professional experience for all customers. We understand that situations can sometimes feel frustrating, and we take comments like yours seriously.

Please contact our customer service line at (646) 883-4280. We appreciate you bringing this to our attention and giving us the opportunity to connect.

211. In 2025, Monique Howard detailed her experience with a badly maintained vehicle, which has affected her ability to drive, and reported that Drive Sally deactivated her vehicle while she was actively driving with her children and tacked on a $25 reactivation fee.[54] She wrote:

[53] *Id.*
[54] *Id.*

**Monique Howard**
12 reviews · 1 photo

★☆☆☆☆ a year ago

The car they gave me has almost 200k miles on it. Anytime I drive for Uber, the customers can feel every single bump in the road no matter how small it is. The car's tail light went out twice due to faulty wiring even though I took it in to be looked at by their crew - terrible mechanics. I'm now facing a third issue with the head light being out which interrupted my work flow and making the payment on time. I asked them if they would give me ONE additional day to make full payment as the light being out on the car causes issues with being pulled over by the police - I CANNOT DRIVE FOR UBER WITH THE CAR IN THE CURRENT CONDITION - it would fail the inspection for Uber. They refused to wait just ONE more day which is my pay day from my main job - they deactivated the car while I was at work. Hours away from receiving payment just to get 25 additional dollars from me. Leaving my children and I stranded in getting home. This company is nothing but greedy. They could care less about how their broke down cars interfere with your ability to actually drive it to make the weekly payments. Their customer service is rude and condescending. I look forward to the day of turning in this BS car and being done with this crappy company.

3

212. Eli Hernadez reported paying a weekly rate much higher than what was advertised on Uber, noting[55]:

**Eli Hernandez**
Local Guide · 55 reviews · 3 photos

★☆☆☆☆ a year ago

Sure you get a vehicle…but one that is rushed and overlooked (can smell bad, or have a mechanical fault). Countless times I've come into a car and there was a nail in a tire, wheel bearing needed to be replaced, or engine problem in general. Definitely not worth the weekly price, which is above what they advertise on uber.

3

Drive Sally (Owner)
a year ago

Thank you for the feedback! We're always willing and able to swap a driver into a new car if the one they received is out of order in some way. Additionally, the prices advertised on the Uber market place do not include any taxes or fees - and the rate is dependent on what year/model you have, of course! Please call in if you need any help or have additional questions around pricing.

---

[55] *Id.*

213. In 2024, Irene Michelle, a driver renting from Drive Sally's Phoenix, Arizona branch,[56] complained of coercive billing practices leading to termination and vehicle deactivation.[57] She wrote:

> **Irene Michelle**
> Local Guide · 59 reviews · 2 photos
>
> ★☆☆☆☆ 2 years ago
>
> I've currently filed a complaint with the BBB against the branch in Phoenix (Gilbert), however, I think court proceedings will be following. I've been renting a 2024 KIA Soul since February making a weekly payment of $460 (late fee included) since I'm late every week but I pay the late fee. I've been splitting the payments in two one on Mondays and the other on Wednesdays except for last week they were demanding the other payment on Tuesday and deactivated the vehicle on Wednesday morning because I hadn't paid the remaining balance of $239 when I asked to pay later on in the day after I completed my reservations for Uber (the vehicle is used for rideshare, how I make a living), I was denied, yet this is how I have been paying them since February now all of a sudden things are written in stone. I don't know about the other branches but Drive Sally in Gilbert, AZ is crooked and I will be seeing them in court for discrimination because that's what it really is. In the meantime, there deactivated vehicle is still on my property! Not to mention, they've started acting a complete butt at the beginning of the month (April) when ALL my bills are due! After making over $4,000 off of me and NO FILED ACCIDENT/INCIDENT claims this is the appreciation I receive. Such great customer service!
>
> 18

[56] Upon information and belief, Drive Sally ceased offering rental services in Phoenix, Arizona in early 2026.

[57] https://www.google.com/search?q=drive+sally+new+york&sca_esv=735c6d2b23e36ca8&rlz=1C1GCEA_enUS1068US1068&sxsrf=ANbL-n5d6IXz4hb7VY2p9eAEFN22VuepTQ%3A1781279241534&ei=CSosapyeIKmpptQP05LN6Qs&biw=1745&bih=828&ved=0ahUKEwjcxr-jhoKVAxWplIkEHVNJM70Q4dUDCBA&uact=5&oq=drive+sally+new+york&gs_lp=Egxnd3Mtd2l6LXNlcnAiFGRyaXZlIHNhbGx5IG5ldyB5b3JrMhEQLhiABBiRAhjHARiKBRivATIFEAAY7wUyCBAAGIAEGKIEMggQABiABBiiBDIFEAAY7wUyIBAuGIAEGJECGMcBGIoFGK8BGJcFGNwEGN4EGOAE2AEBSLUeUNAGWLwccAJ4AZABAJgBpgGgAe8IqgEEMTIuMbgBA8gBAPgBAZgCD6AC3AnCAgoQABiwAxjWBBhHwgIOEAAYsAMY5AIY1gTYAQHCAhcQLhiwAxi4BhjYAhjIAxjaBhjcBtgBAcICCxAuGIAEGMcBGK8BwgIGEAAYFhgewgIaEC4YgAQYxwEYrwEYlwUY3AQY3gQY4ATYAQHCAgoQIxiABBgnGIoFwgIEECMYJ8ICCxAAGIAEGIYDGIoFwgIFEAAYgATCAhAQLhiABBhDGMcBGIoFGK8BwgIOEC4YgAQYxwEYjgUYrwHCAgsQABiABBiRAhiKBcICHRAuGIAEGMcBGI4FGK8BGJcFGNwEGN4EGOAE2AEBmAMAiAYBkAYPugYGCAEQARgJkgcEMTIuM6AHjHGyBwQxMC4zuAfHCcIHCDAuMi4xMC4zyAdVgAgA&sclient=gws-wiz-serp#lrd=0x89c25f2232d1ce6d:0xbe7a65f569e31dab,1,,,,

214. In 2023, Alberto Sandoval complained of excessive fees, unfair termination and badly maintained vehicles.[58] He reported:

ALBERTO SANDOVAL
4 reviews · 1 photo

3 years ago

Really bad experience, they want just your money they will a charge you lots of fees and they will try to termine your contract early to keep your deposit, all the cars have been involved in accidents , don't waste your money here hertz Uber program is cheaper and they treat you better .



3

215. Drivers in New York complained about similar experiences.

216. Recently, about one month ago, driver Kristian Moreno reported returning his vehicle only to thereafter get charged for random fees.[59] He reported:

---

[58] *Id.*

[59] https://www.google.com/search?q=drive+sally+new+york&sca_esv=735c6d2b23e36ca8&rlz=1C1GCEA_enUS1068US1068&sxsrf=ANbL-n5d6IXz4hb7VY2p9eAEFN22VuepTQ%3A1781279241534&ei=CSosapyeIKmpptQP05LN6Qs&biw=1745&bih=828&ved=0ahUKEwjcxr-jhoKVAxWplIkEHVNJM70Q4dUDCBA&uact=5&oq=drive+sally+new+york&gs_lp=Egxnd3Mtd2l6LXNlcnAiFGRyaXZlIHNhbGx5IG5ldyB5b3JrMhEQLhiABBiRAhjHARiKBRivATIFEAAY7wUyCBAAGIAEGKIEMggQABiABBiiBDIFEAAY7wUyIBAuGIAEGJECGMcBGIoFGK8BGJcFGNwEGN4EGOAE2AEBSLUeUNAGWLwccAJ4AZABAJgBpgGgAe8IqgEEMTIuMbgBA8gBAPgBAZgCD6AC3AnCAgoQABiwAxjWBBhHwgIOEAAYsAMY5AIY1gTYAQHCAhcQLhiwAxi4BhjYAhjIAxjaBhjcBtgBAcICCxAuGIAEGMcBGK8BwgIGEAAYFhgewgIaEC4YgAQYxwEYrwEYlwUY3AQY3gQY4ATYAQHCAgoQIxiABBgnGIoFwgIEECMYJ8ICCxAAGIAEGIYDGIoFwgIFEAAYgATCAhAQLhiABBhDGMcBGIoFGK8BwgIOEC4YgAQYxwEYjgUYrwHCAgsQABiABBiRAhiKBcICHRAuGIAEGMcBGI4FGK8BGJcFGNwEGN4EGOAE2AEBmAMAiAYBkAYPugYGCAEQARgJkgcEMTIuM6AHjHGyBwQxMC4zuAfHC




217. Four months ago, driver Cierra Marie complained about predatory contract terms[60]. She wrote:




218. Wezz Fargo similarly complained about nonsensical charges and incessant communications,[61] reporting:

---

cIHCDAuMi4xMC4zyAdVgAgA&sclient=gws-wiz-serp#lrd=0x89c25f2232d1ce6d:0xbe7a65f569e31dab,1,,,,

[60] *Id.*

[61] *Id.*

**Wezz Fargo**
4 reviews

★☆☆☆☆ 8 months ago

In the office service is cool but trying to get them is like wining the lottery. They are horrible at communicating. Only when they want their money or some update on the vehicle is when you hear from them. They will text you to death about issues that had already been resolved. You will inquire charges upon charges for nonsense. I'm sorry they can no longer greet my money.

6

> **Drive Sally (Owner)**
> 8 months ago
>
> We appreciate you taking the time to share your feedback. We're glad to hear you've had positive experiences with our office team, and we're sorry to learn that communication hasn't met your expectations. Our team will be reaching out to you to better understand your concerns and work toward a resolution.

219. About a year ago, JunYi Xiao reported being charged $475 to tow his car due to a maintenance issue he experienced only a month after renting his car. When he inquired about proof of the charges, Drive Sally ignored his request. He wrote:

**JunYi Xiao**
7 reviews · 8 photos

★☆☆☆☆ 11 months ago

On April 11th, I rented a car here. About a month later, on May 11th, I found the car wouldn't fire up, so I recorded a video of the vehicle and reached out to them for help. But their response was nothing but negative and unprofessional—they just told me to call a tow truck. Later, they asked me to pay $475 for the towing without providing any receipts. This feels totally unfair. Since their car had an issue, they should've stepped up to fix it instead of making me cover the cost without any explanation—and they still haven't said a word about it.






220. Google user "JJ9G" complained about an early termination and fee due to a vehicle that was unable to be repaired and no replacement was provided. They wrote:

**JJ9G**
1 review

★☆☆☆☆ a year ago

Don't rent a car here, there are a lot of problems with the car, every repair takes at least 6 hours to wait, the car can't be repaired, you will not be given a replacement or return. You will also be charged $400 for early return when the car is not usable, which is unreasonable! Either you pay for the rental of a car that you can't use, or you are charged $400 for early return.

6

> Drive Sally (Owner)
> a year ago
>
> Thank you for the review. We are sorry that you were not satisfied with the vehicle. We always try to either service the vehicle or switch the vehicle with a suitable option. We sincerely hope that you would reconsider working with us in the future!

221. In 2024, Jasmine C. reported that she was unaware that a $1200 payment was due upon arrival at the pickup site, despite having already paid a $300 deposit. She elaborated that Drive Sally did not afford her additional time to make payment and terminated her vehicle while she was at a gas station.[62] She wrote:

**Jasmine C**
14 reviews · 2 photos

★☆☆☆☆ 2 years ago

I really wish they would tell you about paying your first week upfront aside from the $300 deposit they gave me time to pay but imagine having to come up with $1200 plus in 5 days I came in to make money I can't even sleep I have to be on the road all day and I sent them a message showing them how I can't cash out with Uber that I needed more time and the terminated my contract and deactivated the engine now I'm stuck at a gas station I can't leave the car because of anything happens I'm responsible I'm far from home with no access to money to get home thanks a lot this is so disappointing and so embarrassing not fair at all to have some one pay the first week upfront and I didn't even drive yet and I still have to pay the up coming week. So plus they keep my deposit because the contract is terminated now this in unfair


on 19. Return of leased Vehicles does not abs
le fees and charges incurred during the Lease Ter
LY PAYMENT. The payment due each week (t
ment") for each Rental Period is the SUM OF TI
OUNTS SPECIFIED IN YOUR ACCOU
The Total Weekly Payment is payable in advance
l Period. Payment for the upcoming weekly Ren
y due each and every THURSDAY at 12:30
ch day and time can be changed from time to ti
e discretion of Lessor. The first payment will
nes to a partial week. Payment will be direct
's Payment Account under Section 6. THE TOT
ENT IS SUBJECT TO INCREASE IF LESS
CCIDENTS, POINTS, OR TRAFFIC MOVIN
R FAILS TO MAKE ANY PAYMENT WHEN DU
TAX RULES AND RATES CHANGE,
SECTION 5, OR AS OTHERWISE SPECIFIE
GREEMENT. Failure by Lessee to agree to any r
e considered Early Termination under Section 19

20

[62] *Id.*

222. In San Francisco, Google user "J Only" experienced predatory practices, false promises and loss of income due to Drive Sally repossessing his vehicle to relocate it to another branch.[63] He wrote:

J Only
2 reviews

8 months ago

Horrible company. I don't know what city these other people are from in these reviews, here San Francisco, drive sally has treated me like scum. Predatory practices, false promises; the first car I had they just took it back to "send back to New York" which left me stranded unable to work. Their cars are way overpriced, they gaslight, they hide behind "policy" and when they mess up or their system makes an error and you call them on it, they either don't know what they are talking about or they straight up lie. They run like a criminal organization. Everyone I have ever met that has driven their cars has had a terrible experience with this company. I never write reviews. This company is so awful that I felt compelled to. Let's see if they leave this review up. ZERO STARS!!!

1

Drive Sally (Owner)
8 months ago

We're sorry to hear about your experience and appreciate you bringing this to our attention. This isn't the type of feedback we want our drivers to have. Our team will be reaching out to you to learn more and address your concerns.

63
https://www.google.com/search?q=drive+sally+san+francisco&sca_esv=735c6d2b23e36ca8&rlz=1C1GCEA_enUS1068US1068&biw=1745&bih=828&sxsrf=ANbL-n5UL-qd_f9_UMl3cIO8x0bO4VvPIw%3A1781277637579&ei=xSMsatKAI7OA5OMP39GSsAw&gs_ssp=eJzj4tVP1zc0LDArr0wvM8gyYLRSNaiwMLBIM09LNUiyME2zMDA1tDKoMEk0tDBKSTJITTUwTzE2MPaSTCnKLEtVKE7MyakEknkKaUWJecmZxcn5AL6mGO4&oq=drive+sally+san+fr&gs_lp=Egxnd3Mtd2l6LXNlcnAiEmRyaXZlIHNhbGx5IHNhbiBmcioCCAAyEBAuGIAEGMcBGCcYigUYrwEyBRAAGIAEMgUQABiABDIGEAAYFhgeMgsQABiABBiGAxiKBTIFEAAY7wUyBRAAGO8FMh0QLhiABBjHARiKBRivARiXBRjcBBjeBBjgBNgBAUjMG1AAWOQUcAF4AZABAJgBaaAB2guqAQQxOC4xuAEDyAEA-AEBmAIUoALwDMICChAjGIAEGCcYigXCAhEQLhiABBiRAhjRAxjHARiKBcICCxAAGIAEGJECGIoFwgIOEC4YgAQYsQMYgwEYigXCAgsQABiABBixAxiDAcICDhAuGIAEGLEDGNEDGMcBwgIKEAAYgAQYQxiKBcICFBAuGIAEGJECGLEDGNEDGMcBGIoFwgIQEAAYgAQYsQMYQxiDARiKBcICDRAAGIAEGEMYyQMYigXCAgsQABiABBiSAxiKBcICFxAuGIAEGJECGLEDGNEDGMcBGMkDGIoFwgIREC4YgAQYkgMYxwEYjgUYrwHCAggQABiABBiSA8ICCBAAGIAEGLEDwgILEC4YgAQY0QMYxwHCAg4QLhiABBjHARiOBRivAcICCBAAGIAEGKIEmAMAugYGCAEQARgUkgcEMTguMqAHltUBsgcEMTcuMrgH6wzCBwgwLjEuMTUuNMgHdYAIAA&sclient=gws-wiz-serp#lrd=0x808f7fe0b85f8051:0x4a182db0ee07d303,1,,,,

223. About a year ago, driver Queen Joseph reported discovering fees that were not disclosed in communications or in writing prior to renting.[64] They wrote:

> **Queen Joseph**
> Local Guide · 63 reviews · 3 photos
>
> ★★☆☆☆ Edited a year ago
>
> I rented a car from Drive Sally for about five months. The service level quality is subpar. They NEVER answer the phone no matter the time of day or extension. They barely respond to text messages. Obie in the SF office is great however he is only one person.
>
> They are unreliable if something goes wrong or an accident happens. The cars don't come with roadside assistance or toll passes.
>
> They don't answer questions directly and lack proper communication. After renting I discovered fees that weren't communicated or given in writing before renting.
>
> Renting cars for rideshare is a big rip-off and only the rental and rideshare companies profit. With the pay being so low and declined since I started driving you end up with very little profit after paying for the car and gas.
>
> I had to drive about 10+ hours per day just to earn $200 and have no life. Earning $200 per day wasn't guaranteed and the pay for Uber and Lyft is constantly declining. The Drive Sally rental car was about $400-$500 per WEEK plus ~$300 in gas. Do the math!

224. Drivers in Las Vegas reported more of the same complaints.

225. Recently, driver Jacob Berberich complained about vehicle deactivation without warning and being left stranded until payment is made.[65] He reported:

---

[64] *Id.*

[65] https://www.google.com/search?q=drive+sally+las+vegas&sca_esv=735c6d2b23e36ca8&rlz=1C1GCEA_enUS1068US1068&biw=1745&bih=828&sxsrf=ANbL-n43aidbKfK3mRin3u-qy8G2EC06-g%3A1781285420595&ei=LEIsas_0I_2yptQPmafn-AI&ved=0ahUKEwjPuvOlnYKVAxV9mYkEHZnTGS8Q4dUDCBA&uact=5&oq=drive+sally+las+vegas&gs_lp=Egxnd3Mtd2l6LXNlcnAiFWRyaXZlIHNhbGx5IGxhcyB2ZWdhczIKECMYgAQYJxiKBTIGEAAYFhgeMgYQABgWGB4yCxAAGIAEGIYDGIoFMggQABiABBiiBDIFEAAY7wUyCBAAGIAEGKIEMgUQABjvBUi0F1COA1i8FnALeACQAQCYAVWgAb0HqgECMTO4AQPIAQD4AQGYAg-gAooDwgIKEAAYsAMY1gQYR8ICDhAAGLADGOQCGNYE2AEBwgIXEC4YsAMYuAYY2AIYyAMY2gYY3AbYAQHCAhAQLhiABBjHARgnGIoFGK8BwgIFEAAYgATCAh0QLhiABBjHARiKBRivARiXBRjcBBjeBBjgBNgBAcICDhAuGIAEGMcBGI4FGK8BwgILEAAYgA

**Jacob Berberich**
2 reviews
★☆☆☆☆ a week ago NEW

Probably the worst car company I've ever delt with. They do not work with customers at all if they do not receive payment of car they will disable your car without warning. They won't work with you at all for a payment plan like other companies. They will leave you stranded until you pay them. I'm pretty sure their practices are illegal. I wanted to warn everyone else so no else would have to suffer.

Hover to react

226. About six months ago, Tiairia Simmons detailed renting a badly maintained vehicle, threatening billing practices, vehicle deactivation and being charged with an undisclosed fee of $400 for not timely scheduling an appointment to return her vehicle.[66] She wrote:

**Tiairia Simmons**
4 reviews · 1 photo
★☆☆☆☆ 6 months ago

I thought I booked with a great rental company until I got in the vehicle. Not only was the car damaged bu the car needed serious maintenance the car also needed new breaks. I was told my payments would be one day and instead they were a completely different day. To add insult to injury when I booked no one told me if you don't call ahead and schedule a day to return your vehicle they charge you $400. So now they are keeping my $400 deposit due to me not making an appointment to return. The entire time I've dealt with this company the people have been so rude and nasty and they act as if they make no mistakes when they most definitely do! And if you don't pay on the scheduled dates they will turn your ca off until you pay! I will never book with them ever again and won't be referring anyone either!!

Hover to react

Drive Sally (Owner)
6 months ago

We're very sorry to hear about your experience. This is not the level of service or communication we aim to provide, and we understand how frustrating this must have been. We'd really appreciate the chance to look into these issues and make things right. Please reach out to us directly so we can review your concerns and work toward a resolution.

---

QYkQIYigXCAgoQABiABBgUGIcCwgIIEAAYogQYiQWYAwCIBgGQBg-6BgYIARABGAmSBwIxNaAH2ogBsgcBNLgHygLCBwcwLjQuOS4yyAdDgAgA&sclient=gws-wiz-serp#lrd=0x80c8d183a3c8d22b:0x7ec746d0f6fe035,1,,,,

[66] *Id.*

227. In 2024, driver Chrissy Mosley complained about coercive billing practices including vehicle deactivation through kill-switch technology. Notably, she experienced vehicle deactivation despite having a zero balance on her account just days before the busy Christmas holidays.[67] She reported:

> **Crissy Mosley**
> Local Guide · 123 reviews · 9 photos
>
> ★☆☆☆☆ Edited 2 years ago
>
> Currently a driver DON'T RENT from here customer service is horrible..the vehicles have killz switches and will kill your car just because your payment is not on time. The more they kill your car the further behind it gets you. Driving Uber most of us cash out the end of the day. Well to bad if they shut down your car. Even after paying on the app. It's difficult to get a live person to reactivate ..I had to act as if I was in a wreck get someone in claims just to get my car back running ..So your stranded until someone TEXT you back in the app
> I can't wait to buy me a car. This is causing more stress... update after all that my car was turned off again..no payments where due and it was the day before Christmas eve and Christmas Eve the most busiest days to make money i couldn't drive because they killed the car. This messed me up so bad..I ended up getting another vehicle from somewhere else and they still have been trying to charge my card..I'm sorry I rather walk before renting again from drive sally and to not be able to talk to a live person on a regular basis is grounds for this company to go under.

## <u>CLASS DEFINITIONS AND ALLEGATIONS</u>

228. Plaintiff brings this action and seeks to certify and maintain it as a class action under Fed. R. Civ. P. 23(a), (b)(1), (b)(2), and (b)(3), individually and on behalf of the following Class:

> **<u>Nationwide Class</u>:** All persons in the United States who entered into a Rental Agreement with Drive Sally.
>
> **<u>Illinois State Subclass</u>**: All persons residing in Illinois who entered into a Rental Agreement with Drive Sally.

229. Excluded from the Classes are: (i) Drive Sally; (ii) Drive Sally's employees, officers, directors, legal representatives, heirs, successors, and wholly or partly owned subsidiaries or affiliates; (iii) governmental entities; (iv) all persons who make a timely election to be excluded

---

[67] *Id.*

from the Classes; and (v) the Judge and staff to whom this case is assigned, and any member of the Judge's immediate family.

230. Plaintiff reserves the right to modify or amend the definitions of the proposed Classes and/or to add Subclasses if necessary before the Court determines whether certification is appropriate and as the Court may otherwise allow.

231. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

232. This action has been brought and may be properly maintained on behalf of each of the Classes proposed herein under Fed. R. Civ. P. 23.

233. *Numerosity*: The members of the proposed Classes are so numerous and geographically dispersed that the individual joinder of all Class Members is impracticable. Plaintiff believes that the Class contains thousands of renters who have been harmed by Drive Sally's conduct. While the exact number of Class Members is unknown to Plaintiff at this time, it is in Drive Sally's control, and it is ascertainable by appropriate discovery including through Drive Sally's sophisticated databases.

234. *Commonality and Predominance* (Rule 23(a)(2) & 23(b)(3): This action involves common questions of law or fact, which predominate over any questions affecting individual Class Members, including, but not limited to:

i. Whether Defendant engaged in the conduct alleged herein;

ii. Whether Defendant's conduct in making misrepresentations about its rental services and omitting the existence of substantial costs and material contractual terms constitutes and "unfair or deceptive act or practice" under the New York General Business Law § 349;

iii. Whether Defendant's marketing and advertising conduct constitutes false advertising under the New York General Business Law § 350;

iv. Whether Defendant's conduct violates other states' consumer protection laws;

v. Whether Defendant's omissions about costs and contractual terms were material and reasonably likely to deceive consumers with regards to the decision to enter into a rental agreement;

vi. Whether Plaintiff and Class Members were fraudulently induced to enter into rental agreements;

vii. Whether Plaintiff and Class Members overpaid for rental agreements;

viii. Whether Plaintiff and Class Members were injured by Defendant's conduct and suffered an ascertainable loss as a result;

ix. Whether there is a valid contract between Defendant and Class Members;

x. Whether Defendant breached its contract with Class Members;

xi. Whether Defendant breached the covenant of good faith and fair dealing;

xii. Whether Defendant has been unjustly enriched; and

xiii. Whether Plaintiff and Class Members are entitled to damages, including punitive damages, as a result of Defendant's conduct alleged herein, and if so, the amount or proper measure of those damages.

235. *Typicality*: Plaintiff's claims are typical of the claims of all Class Members. Plaintiff, like all Class Members experienced Drive Sally's misconduct and entered into the similar Rental Agreements through the same standardized onboarding process and Order Forms, which purport to incorporate the same Term and Conditions – a type of form contract that subjects Plaintiff and Class Members to the same terms and conditions.

236. *Adequacy of Representation*: Named Plaintiff is an adequate representative of the Classes because her interests do not conflict with the interests of the other Class Members they seek to represent; they have retained counsel competent and experienced in complex class action

litigation, and Plaintiff will prosecute this action vigorously. The Class Members' interests will be fairly and adequately protected by Plaintiff and her counsel.

237. *Superiority*: A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiff and members of the Class. The injury suffered by each individual Class Member is relatively small in comparison to the burden and expense of individual prosecution of these claims, including from the need for expert witness testimony on the technical and economic aspects of the case. Individualized litigation also would risk inconsistent or contradictory judgments and increase the delay and expense to all parties and the courts. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## CLAIMS FOR RELIEF

## COUNT 1

**Violation of the New York General Business Law**
**NY Gen Bus L § 349 (GBL § 349 Deceptive Acts and Practices)**
**Plaintiff, on Behalf of the Nationwide Class**

238. Plaintiff realleges and incorporates by reference all preceding allegations as though fully set forth herein.

239. Plaintiff Thomas brings this cause of action individually and on behalf of the Nationwide Class.

240. New York General Business Law § 349 declares as unlawful "[d]eceptive acts and practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state," and grants a private right of action to individuals injured by reason of any violation. §§ 349(a);(h).

241. Drive Sally is a limited liability corporation that maintains its principal place of business in New York and otherwise conducts business in this state.

242. Drive Sally has engaged in deceptive acts and practices in advertising, promoting, marketing, selling and renting of vehicles in violation of the New York General Business Law § 349.

243. Drive Sally has engaged in a consumer-oriented bait-and-switch practice by advertising its rentals as fixed, all-inclusive transactions with insurance and maintenance included, no hidden fees, promising vehicle reliability and rideshare eligibility, and then obtaining deposits, payment credentials, vehicle reservations and travel commitments from drivers before disclosing the complete economic and contractual obligations of the transaction.

244. Drive Sally omits what the insurance and maintenance benefits do and do not cover, that drivers remain liable for vehicle damage, roadside service, towing, storage and repair costs and continued weekly payments during vehicle downtime, and that additional substantial fees would apply and that drivers faced continual payment obligations that would make it difficult to exit their rental agreements without significant effort and costs. These facts were known to Defendant, were material to consumers, and were not disclosed to consumers.

245. Defendant employs a standardized onboarding process that obtains deposits, payment credentials and travel commitments before disclosing any terms that govern the rental agreement. Although Defendant discloses certain weekly line-item charges, it does not disclose the scope and limitations of the benefits purchases or the substantial additional liabilities and costs the drivers face.

246. Drive Sally's deceptive acts and practices as described herein were developed, implemented, managed, and controlled from Drive Sally's headquarters in Long Island City, New York.

247. Drive Sally's deceptive conduct is consumer-oriented in that it is directed at all current and prospective customers of Drive Sally, involves standardized advertising, onboarding and form contracts disseminated to the general consuming public, and has the capacity to deceive a reasonable consumer.

248. Drive Sally knew, should have known, or was reckless in not knowing that its deceptive acts or practices could deceive a substantial portion of the purchasing public.

249. The facts that Drive Sally misrepresented to and concealed from Plaintiff and the other Class Members are material because a reasonable consumer under similar circumstances would have considered them to be important in deciding whether to rent a vehicle from Drive Sally.

250. In engaging in the deceptive acts or practices alleged herein, Drive Sally has knowingly and intentionally concealed material facts.

251. Had Plaintiff Thomas and the Class Members known what the insurance and maintenance benefits did and did not cover and the substantial additional liabilities, fees and obligations that they retained, they would not have entered into agreements with Drive Sally.

252. Had Plaintiff Thomas and the Class Members known about the full terms that governed their agreement with Drive Sally they would not have entered into agreements with Drive Sally.

253. As a direct and proximate result of Drive Sally's deceptive acts and practices as described herein, Plaintiff Thomas and the Class Members have suffered injury in fact and actual

damages including but not limited to deposits, ancillary insurance products, increased rental rates, unauthorized fees, retained funds and other out-of-pocket expenses Plaintiff and Class Members would not have made but for the practice.

254. The gravity of harm resulting from Drive Sally's deceptive conduct outweighs any potential utility. The practice of renting vehicles without disclosing the true cost or material terms of the rental agreement harms the public at large and is part of a common and uniform course of wrongful conduct.

255. The harm from Drive Sally's conduct was not reasonably avoidable by consumers. Drive Sally targets rideshare drivers who depend on continuous vehicle access to earn income and who often lack the sophistication and economic flexibility to resist coercive business practices. Moreover, consumers are presented with standard form contracts and do not possess meaningful negotiating power. Additionally, even after receiving consumer complaints, Drive Sally did not change its deceptive practices.

256. Plaintiff Thomas and Class Members are entitled to recover their actual damages and reasonable attorneys' fees under GBL § 349(h).

257. Plaintiff Thomas and the Class Members also seek punitive damages for Drive Sally's willful violations under GBL § 349(h).

258. Accordingly, Plaintiff and Class Members are entitled to relief under the GBL including restitution and reasonable attorneys' fees, as well as any other relief the Court may deem just or proper.

## COUNT 2

**Violation of the New York General Business Law**
**NY Gen Bus L § 350 (GBL § 350 False Advertising)**
**Plaintiff, on Behalf of the Nationwide Class**

259. Plaintiff realleges and incorporates by reference all preceding allegations as though fully set forth herein.

260. Under New York General Business Law § 350 "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state" is unlawful.

261. Drive Sally's advertising representations, as described herein, including representations that its rental prices are all-inclusive, that there are no hidden fees, that insurance and maintenance are included, that its vehicles are meticulously maintained, suitable for most rideshare platforms and permitted for personal and commercial use constitute false advertising within the meaning of § 350.

262. Drive Sally's advertising is materially false, deceptive, and misleading. Reasonable consumers were and are likely to be deceived by Drive Sally's representations into believing that the quoted weekly rental price purchased meaningful insurance and maintenance coverage and that they would not retain substantial undisclosed liabilities, obligations and additional fees. The advertisements omitted that the rental services exposed drivers to substantial liabilities, obligations, costs and fees.

263. Plaintiff Thomas and Class Members relied on Drive Sally's representations made in its advertising when deciding to enter into rental agreements.

264. Plaintiff Thomas and Class Members were injured by Drive Sally's false advertising in that they paid sums to Drive Sally they would not have paid, had Drive Sally's advertising been truthful including but not limited to deposits, ancillary insurance products, increased rental rates,

unauthorized fees, retained funds and other out-of-pocket expenses Plaintiff and Class Members would not have made but for the practice.

265. Defendant knowingly disseminated false and misleading advertising to the public, including representations that its rental services were offered at "all-inclusive" weekly rates with "no hidden fees" and included insurance and maintenance, while obtaining financial and logistical commitments from consumers and withholding material terms from drivers until after they had financially and logistically committed to the transaction.

266. Drive Sally's customer-facing representations and advertisements were developed, implemented, managed, and controlled from Drive Sally's headquarters in Long Island City, New York.

267. Drive Sally's false advertising is consumer-oriented in that it is directed at all current and prospective customers of Drive Sally and involves standardized advertising disseminated to the general consuming public and has the capacity to deceive a reasonable consumer.

268. Plaintiff Thomas and Class Members are entitled to recover their actual damages and reasonable attorneys' fees under GBL § 350-e.

269. Defendant's violations of New York General Business Law § 350 were willful, knowing, and carried out in bad faith, thereby entitling Plaintiff and the Class to an award of punitive damages.

## COUNT 3

**Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act**
**815 Ill. Comp. Stat. §§ 505/1-505/12 ("ICFDBPA")**
**Plaintiff, Individually and on Behalf of the Illinois Subclass**

270. Plaintiff realleges and incorporates by reference all preceding allegations as though fully set forth herein.

271. Plaintiff Thomas brings this cause of action individually and on behalf of the Illinois Subclass.

272. Drive Sally is a "person" as defined in 815 Ill. Comp. Stat. 505/1(c).

273. Drive Sally is involved in the "trade or commerce" of "merchandise" as defined in 815 Ill. Comp. Stat. 505/1(b) and (f).

274. Plaintiff Thomas and the Illinois Subclass class members are "consumer(s)" as defined in 815 Ill. Comp. Stat. 505/1(e).

275. The ICFDBP prohibits "unfair methods of competition and unfair or deceptive acts or practices, including, but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act', … whether any person has in fact been misled, deceived or damaged thereby." 815 Ill. Comp. Stat. 505/2.

276. Drive Sally's acts and practices, described herein, are unfair and deceptive in violation of Illinois law because it violates Illinois consumer protection laws and common law requiring a rental service company to truthfully represent the true costs and terms of its rental agreements to consumers before consumers financially and practically commit to transactions.

277. Drive Sally acted in an unfair and deceptive manner in at least the following respects:

a. Representing that its rental services would have fixed weekly rates with "no hidden fees" and "all inclusive" pricing while obtaining financial and logistical commitments from drivers and thereafter imposing additional charges and fees;

b. Representing that insurance and maintenance coverage were included in the rental services without disclosing, before commitment, what those benefits covered and excluded and the substantial vehicle damage, deductible, roadside, towing, repair and downtime liabilities retained by the driver;

c. Failing to disclose the full terms of the rental agreements; and

d. Misrepresenting the condition, reliability and rideshare eligibility of its rental vehicles.

278. Drive Sally's unfair or deceptive acts or practices occurred repeatedly in its trade or business and were capable of deceiving a substantial portion of the purchasing public.

279. Drive Sally knew, should have known, or was reckless in not knowing that its deceptive acts or practices were capable of deceiving a substantial portion of the purchasing public.

280. Drive Sally had a duty to disclose to Plaintiff and the Illinois Subclass members the true cost and terms of its rental services because:

a. Drive Sally knew of, but actively concealed from Plaintiff and the Illinois Subclass members, the true cost and the full terms of the rental agreements, including substantial additional liabilities and fees; and

b. Drive Sally was in a superior position to know the true facts about its rental services, and Plaintiff and Illinois Subclass members could not reasonably have been expected to discover the true facts until after contract execution;

281. The facts that Drive Sally misrepresented to and concealed from Plaintiff and the other Illinois Subclass members are material because a reasonable consumer would have considered them to be important in deciding whether to rent from Drive Sally.

282. In failing to disclose the true cost and terms of the rental agreement, Drive Sally has knowingly and intentionally concealed material facts in breach of its duty to disclose.

283. Plaintiff Thomas and the Illinois Subclass members have suffered an injury in fact and actual damages resulting from Drive Sally's unfair or deceptive practices, including but not limited to deposits, ancillary insurance products, increased rental rates, unauthorized fees, retained funds and other out-of-pocket expenses Plaintiff and Class Members would not have made but for the practice.

284. As a direct and proximate result of Drive Sally's unfair and deceptive conduct, Plaintiff Thomas and the Illinois Subclass members have been harmed.

285. The gravity of harm resulting from Drive Sally's deceptive conduct outweighs any potential utility. The practice of leasing vehicles without disclosing the true cost or terms of the rental agreement harms the public at large and is part of a common and uniform course of wrongful conduct.

286. The harm from Drive Sally's conduct was not reasonably avoidable by consumers. Drive Sally targets rideshare drivers who depend on continuous vehicle access to earn income and who often lack the sophistication and economic flexibility to resist coercive business practices. Moreover, consumers are presented with standard form contracts and do not possess meaningful negotiating power. Additionally, even after receiving consumer complaints, Drive Sally did not change its deceptive practices.

287. Plaintiff Thomas and Class Members are entitled to recover their actual damages and reasonable attorneys' fees under 815 Ill. Comp. Stat. 505/2S; 815 Ill. Comp. Stat. 505/10a(a).

288. Plaintiff Thomas and the Class Members also seek punitive damages for Drive Sally's willful violations under 815 Ill. Comp. Stat. 505/10a(a).

289. Accordingly, Plaintiff and Class Members are entitled to relief under the ICFDBPA including restitution and reasonable attorneys' fees, as well as any other relief the Court may deem just or proper.

## COUNT 4

### Fraudulent Inducement
### Plaintiff, on Behalf of the Nationwide Class

290. Plaintiff realleges and incorporates by reference all preceding allegations as though fully set forth herein.

291. Drive Sally represented to Plaintiff and Class Members through its representations, marketing and advertising that: (a) rental vehicles were available "from $275.00/week" a representation that a reasonable consumer would understand to mean the a fixed weekly cost for the rental service; (b) "Insurance and maintenance included" a representation that a reasonable consumer would understand to mean that meaningful insurance and maintenance coverage would be provided and are bundled into the weekly cost for the rental service , with no additional charges; (c) "No hidden fees" described as "Transparent pricing means no surprises — what you see is what you pay. No unexpected costs, just a straightforward rental that fits your budget"; and (d) vehicles are "clean and reliable" and "meticulously maintained."

292. Each of these representations was false or misleading when made, for the reasons set forth below.

293. The representation that insurance and maintenance are "included" was misleading. It conveyed that the rental came with meaningful coverage, when in fact the driver retained responsibility for damage to the vehicle up to a deductible (and without limit for break-ins, hit-and-runs and out-of-radius use), for roadside service, towing, storage and third-party repair

surcharges, and for continued weekly payments while the vehicle was unusable — none of which was disclosed before the driver committed to the transaction.

294. The representation of "no hidden fees" was false or misleading. Drive Sally's Additional Fees and Charges Schedule, which is not provided to drivers before or during the contract formation, contains numerous undisclosed fees, including: an Early Termination Fee of $400; a Camera Fee of $350; a Lost or Broken Key Fee of $400; a Cleaning Fee–Odor of $250; a Ticket Service Fee of 20% of ticket cost; Third Party Service and Repairs at 15% of cost; a Missed Maintenance Appointment fee of $150; a Reactivation Fee of $25; and others. The characterization of Drive Sally's pricing as transparent and free of hidden fees was materially false or misleading in light of these charges, none of which were disclosed before drivers committed to the transaction.

295. In addition, Drive Sally's employees at pickup locations made material misrepresentations to Plaintiff and Class Members at the time of contract execution about the drivers' exposure for damage to the vehicle and its insurance policies and required minimum rental term period.

296. In addition to affirmative misrepresentations, Drive Sally omitted material facts it was obligated to disclose, including the existence of additional fees and the full governing Terms and Conditions, which were not disclosed at the time Plaintiff and Class Members committed to the transaction, or at any time prior to execution. The omitted facts include what the insurance and maintenance benefits covered and excluded; the deductible and vehicle damage exposure retained by the driver; roadside assistance; towing, storage and repair obligations; the obligation to continue weekly payments during vehicle downtime; additional fees; the rate modification provisions; and the consequences of termination.

297. Drive Sally made each of the foregoing misrepresentations with knowledge of their falsity, or in reckless disregard of their truth or falsity, as evidenced by the following:

a. Drive Sally drafted its advertising representations and its standard forms which comprise the rental agreements;

b. Having been authorized to discuss and explain contract terms, Drive Sally's employees at the pickup locations made oral representations about insurance coverage that they knew or should have known to be inconsistent with the written terms of the Rental Agreement;

c. Having been authorized to discuss and explain contract terms, Drive Sally's employees at the pickup location made oral representations about what the insurance and maintenance benefits covered and the required minimum rental term period that they knew or should have known to be inconsistent with the written terms of the Rental Agreement;

d. Drive Sally has received extensive consumer complaints, documented on Google, reflecting that other drivers were similarly misled by the same representations and experienced the same undisclosed charges and coercive business practices. Drive Sally's continuation of its advertising scheme with knowledge of these complaints establishes knowledge; and

e. Structuring its ancillary purchase options at pickup so that a Standard tier insurance policy with a $50,000 deductible exposes drivers to substantial liability and using that liability to sell to drivers additional ancillary products to offset the liability. This structure of the insurance charges is a calculated choice and is designed to confuse and extract maximum revenue from vulnerable rideshare drivers.

298. Drive Sally made each of the foregoing misrepresentations with the intent to induce Plaintiff and Class Members to: (a) select Drive Sally over competing vehicle rental services; (b) pay a deposit and travel to a pickup location before the contract was presented; (c) sign the Order Form without providing a meaningful opportunity to review the full terms of the agreement; and (d) keep drivers locked into transactions by requiring continuous weekly payments, charging undisclosed fees and employing coercive billing practices.

299. Drive Sally's business model itself evidences its intent to induce reliance under circumstances that would prevent drivers from later refusing the contract terms. By requiring a

deposit and payment method before the contract was presented, requiring drivers to physically travel to a pickup location before seeing the full Terms and Conditions, and having employees make oral representations that minimized the obligations the driver was accepting, Drive Sally designed a formation process whose purpose was to ensure that drivers would sign the Order Form regardless of its terms.

300. Plaintiff's and Class Members' reliance on Drive Sally's representations was justifiable under the circumstances because: (a) the representations appeared on Drive Sally's public website and Uber's official driver platform, a marketplace that Plaintiff and Class Members reasonably trusted to contain accurate information about rental services; (b) the representations used clear, unambiguous language ("included," "no hidden fees"); (c) Plaintiff and Class Members are individual rideshare drivers, not sophisticated commercial entities or actors who reasonably relied on the plain meaning of the advertised terms; and (d) Drive Sally took affirmative steps to prevent discovery of the true cost of its rental before contract execution, including by requiring drivers to pay deposits, travel to pick up locations and failing to disclose material terms at the pickup location upon contract execution.

301. Reliance on the oral representations made by Drive Sally's employees at pickup locations was justifiable because: (a) Drive Sally's employees, who did affirmatively explain the contract's terms while presenting a contract for signature, created an appearance of authority and accuracy on which it is entirely reasonable to rely; (b) Plaintiff and Class Members had no reason to believe that Drive Sally's employees would make representations known to be inconsistent with the written contract; (b) Plaintiff and Class Members are individual rideshare drivers, not sophisticated commercial entities or actors who retain counsel to review rental agreements; (c) Plaintiff and Class Members were presented with the Order Form for signature at the pickup

location and not the full Terms and Conditions or the Fee Schedule despite being physically present, and the employee's oral representations were the primary source of information about the contract's terms; and (d) Plaintiff and Class Members were pressured to execute the contract because they were already financially committed to the transaction having paid deposits and traveled to pickup locations to retrieve vehicles, pressure that a reasonable person in the same position would experience.

302. The justifiability of Plaintiff's and Class Members' reliance is not defeated by any of the Rental Agreement's written terms.

303. Had Drive Sally accurately disclosed, before drivers committed to the transaction, what the insurance and maintenance benefits covered and excluded, the liabilities, fees and obligations drivers retained, and the full terms that govern the rental agreements, Plaintiff and Class Members would not have rented from Drive Sally.

304. Plaintiff and Class Members suffered actual damages as a direct and proximate result of their justifiable reliance on Drive Sally's misrepresentations.

305. In addition to actual damages, Plaintiff and Class Members are entitled to rescission of the Rental Agreement and restitution of all amounts paid thereunder.

## COUNT 5

**Breach of Contract (Unauthorized Charges)**
**Plaintiff, on Behalf of the Nationwide Class**

306. Plaintiff realleges and incorporates by reference all preceding allegations as though fully set forth herein.

307. Alternatively, should the Court find that a valid and enforceable contract existed between the parties which incorporates the Terms and Conditions, Plaintiff alleges Drive Sally breached its own contractual obligations as follows.

308. Section 4 of the Terms and Conditions specifies the reasons for which Drive Sally may increase weekly rental rates, yet Drive Sally raised the weekly rental rate for Plaintiff and Class Members for reasons that fall outside of Section 4.

309. Additionally, Drive Sally imposed fees that were not properly disclosed or applied in accordance with the Rental Agreement, including the Fee Schedule.

310. Drive Sally materially breached the parties' agreement by: (a) charging fees not properly disclosed or applied in accordance with the Fee Schedule, including toll service charges exceeding the $0.50 per-toll fee, fees associated with driving behavior, late and reactivation fees assessed after Plaintiff’s payment date had been rescheduled, and a $400 Early Termination Fee upon Drive Sally’s own termination without the notice required by Section 19; and (b) increasing weekly rental rates for reasons not permitted under Section 4.

311. As a direct and proximate result of Drive Sally's breaches, Plaintiff and Class Members have suffered damages in an amount to be determined at trial, including the amounts paid for payment of unauthorized charges, overpayment of rental fees and imposition of improper rental rate increases.

## COUNT 6
## Breach of Contract (Failure to Return Deposits)
## Plaintiff, on Behalf of the Nationwide Class

312. Plaintiff realleges and incorporates by reference all preceding allegations as though fully set forth herein.

313. Alternatively, should the Court find that a valid and enforceable contract existed between the parties which incorporates the Terms and Conditions, Plaintiff alleges Drive Sally breached its own contractual obligations as follows.

314. Section 8 of the Rental Agreement's Terms and Conditions obligates Drive Sally to return deposits within one month after termination of the Rental Agreement.

315. Drive Sally has failed to timely return the deposits of Plaintiff and Class Members.

316. Drive Sally's failure to timely return Ms. Thomas's deposit constitutes a material breach of the Rental Agreement.

317. As a direct and proximate result of that breach, Plaintiff and Class Members have been deprived of funds that Drive Sally was contractually obligated to return and have suffered damages in an amount to be determined, including the value of the withheld deposit, interest, and any other relief available under applicable law.

## COUNT 7

**Breach of the Implied Covenant of Good Faith and Fair Dealing**
**Plaintiff, on Behalf of the Nationwide Class**

318. Plaintiff realleges and incorporates by reference all preceding allegations as though fully set forth herein.

319. Implied in every contract under the laws of the state of New York, there is a covenant of good faith and fair dealing in the course of contract performance which embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract. *Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384, 389 (1995).

320. The implied covenant of good faith and fair dealing is breached when a party to a contract acts in a manner that, although not expressly forbidden by any contractual provision, would deprive the other party of the right to receive the benefits under their agreement. *Atlas El. Corp. v. United El. Grp., Inc.*, 2010 N.Y. App. Div.LEXIS 7747, at *3–4 (App. Div. 2nd Dep't Oct. 26, 2010).

321. Section 10 of the Terms and Conditions grants Drive Sally the unilateral right to change any material term of the Lease — including price, deposit, lease term, and geographic restrictions — at any time, for any reason, without limitation. The driver has no reciprocal right to demand changes; any change a driver requests requires Drive Sally's agreement, but changes Drive Sally requires are imposed without mutual consent. This one-sided modification power has no reasonable commercial justification and is substantively oppressive;

322. Section 12.C of the Terms and Conditions provides that consumers "must keep making any Total Weekly Payments as they come due even if the Vehicle is damaged or unusable for a period of time [subject to Section 14]."

323. In the event of a default, Section 17 of the Terms and Conditions grants Drive Sally the right to "take any reasonable action to correct [renter's] default or to prevent [Drive Sally's] loss."[68] Additionally, Drive Sally may repossess the vehicle by legal process or self-help provided the peace is not breached.

324. Drive Sally breached the implied covenant of good faith and fair dealing in the following ways:

a. Unilaterally raising Plaintiff's and Class Members' weekly rate for reasons unspecified by Section 4 defeating Plaintiff's and Class Members' reasonable expectation of sufficient notice and adherence to the specified reasons for rate increases set forth in Section 4 of the contract;

b. Using kill-switch technology to deactivate Plaintiff's and Class Members' vehicles defeating Plaintiff's and Class Members' reasonable expectation of sufficient notice and safety while operating the vehicle;

c. Arbitrarily employing coercive billing practices to obtain payment from drivers for short lapses in payment, including but not limited to, arbitrarily changing payment due dates, accelerated deadlines, threatened deactivation and repossession of vehicles on short notice and charging additional fees and/or deposits;

[68] *See* Section 17 in Exhibit A.

d. Demanding payment from Plaintiff's and Class Members' when vehicles are determined to be inoperable and/or unusable due to no fault of Plaintiff and Class Members, defeating their reasonable expectation that that they would receive the benefit of their bargain — namely, continuous access to a safe, operable vehicle in exchange for the weekly rental payment, that payment obligations would be suspended or abated during any period in which the vehicle could not be operated through no fault of their own, and that Section 25 obligated Drive Sally for maintenance and repair;

e. Installing monitoring equipment in vehicles during required maintenance appointments without notice to drivers, and thereafter exercising its discretion arbitrarily by assessing driver behavior fees for conduct that did not occur, was not attributable to the driver, or was not erratic.

f. Imposing new contract terms without sufficient notice or opportunity to review and employing coercive methods to obtain drivers' signatures on new Order Forms and threatening to charge early termination fees for drivers who do not immediately sign.

325. By exercising the above, Defendant prevented Plaintiff and Class Members from receiving the fruits of their agreements and thereby breached the implied covenant of good faith and fair dealing.

**<u>COUNT 8</u>**

**Unjust Enrichment**
**Plaintiff, on behalf of the Nationwide Class**

326. Plaintiff realleges and incorporates by reference all preceding allegations as though fully set forth herein.

327. Plaintiff brings this claim individually and on behalf of the members of the Nationwide Class.

328. This claim is pleaded in the alternative to the breach of contract claims set forth herein should the Court deem the contract claims legally invalid.

329. As a result of Defendant's conduct in the advertising, marketing, selling and rental of vehicles, Defendant was enriched at the expense of Plaintiff and other Class Members through their purchase of Rental Agreements and other payments made related to the agreements because the agreements did not provide the benefits as represented.

330. Drive Sally has voluntarily accepted and retained these profits and benefits, with full knowledge and awareness that, as a result of Drive Sally's misconduct alleged herein, Plaintiff and the Class were not receiving services of the quality, nature, fitness, or value that had been represented by Drive Sally, and that a reasonable consumer would expect. Specifically, Plaintiff and the Class Members expected that when they purchased their Rental Agreements, they would receive meaningful insurance and maintenance coverage for the amounts charged, would not be subjected to hidden fees or to vehicle damage, roadside assistance, towing and repair liabilities, and would not be required to make weekly payments during periods in which the vehicle was inoperable and/or unusable be charged with other excessive fees including, but not limited to reactivation fees and early termination fees.

331. Drive Sally has been unjustly enriched by its fraudulent, deceptive, unlawful, and unfair conduct, and its withholding of benefits and unearned monies from Plaintiff and Class Members, at the expense of these parties.

332. Equity and good conscience militate against permitting Drive Sally to retain these profits and benefits.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of members of the Class, respectfully request that the Court certify the proposed Class, designate Plaintiff as Class representative, appoint the undersigned as Class Counsel, and enter an Order providing for the following:

a. An Order declaring that Drive Sally's conduct violates GBL §§ 349 and 350, the ICFDBPA, constitutes fraudulent inducement, breach of contract, breach of the covenant of good faith and fair dealing, and unjust enrichment;

b. An Order permanently enjoining Defendant from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

c. Actual damages, statutory damages and treble damages to Plaintiff and Class Members pursuant to GBL §§ 349 and 350 and the ICFDBPA;

d. Compensatory damages – for breach of contract and breach of the covenant of good faith and fair dealing, including, unauthorized rate increases, amounts paid for ancillary products, refundable deposits, inflated toll fees, reactivation and late fees, Early Termination fees and lost earnings caused by vehicle deactivations and mechanical failures;

e. Other costs, restitution, recission, damages, including punitive damages, penalties, and disgorgement in an amount to be determined at trial;

f. An Order requiring Drive Sally to pay both pre and post judgment interest on any amounts awarded;

g. An award for reasonable attorneys' fees and costs as permitted by law; and

h. An Order entering such other relief as the Court may deem just and proper.

**<u>JURY TRIAL DEMANDED</u>**

Plaintiff hereby demands a trial by jury for all claims so triable.

Dated: August 31, 2026

Respectfully submitted,

*By: /s/ Steven A. Schwartz*
Steven A. Schwartz (*pro hac vice forthcoming*)
Marissa N. Pembroke (*pro hac vice forthcoming*)
**CHIMICLES SCHWARTZ KRINER & DONALDSON-SMITH LLP**
361 West Lancaster Avenue
Haverford, PA 19041
Phone: 610-642-8500
Fax: 610-649-3633
sas@chimicles.com
mnp@chimicles.com

**LOWEY DANNENBERG, P.C.**

*By: /s/ Christian Levis*
Christian Levis
Amanda Fiorilla
**LOWEY DANNENBERG, P.C.**
44 South Broadway Suite 1100
White Plains, NY 10601
Phone: 914-997-0500
Fax: 914-997-0035
clevis@lowey.com
afiorilla@lowey.com

*Attorneys for Plaintiff and the Proposed Class*